2005 VT 92

**In re Appeal of TEKRAM PARTNERS, Century Partners and Judge Companies**

[883 A.2d 1160]

No. 04-049

¶ 1. July 28, 2005. Appellants Tekram Partners, Century Partners, and Judge Companies (hereinafter collectively referred to as Tekram Partners) appeal the environmental court's decision upholding three zoning violations issued by the City of South Burlington. Tekram Partners argue that the exclusivity-of-remedy provision in 24 V.S.A. § 4472 bars the City from raising certain violations because the City approved these disputed design features when it issued certificates of occupancy three years earlier. Tekram Partners further contend that nothing on the approved site plan or in the City's zoning ordinance imposes a requirement to "stripe" (i.e. paint) parking spaces. As to two of the violations raised on appeal, we reverse. Regarding the third violation, we conclude that the lines indicating parking spaces on the approved site plan are sufficient to impose a striping requirement, and, therefore, we affirm the environmental court's decision to uphold the striping violation. The City cross-appeals from the environmental court's dismissal of an alleged zoning violation regarding the unapproved location of one garbage dumpster. Tekram Partners complain that the fifteen-year limitations period under 24 V.S.A. § 4454 (formerly § 4496[1]) precludes the City's enforce-

---

[1] In 2004, the Vermont Planning and Development Act, 24 V.S.A. § 4301 et seq., was substantially reorganized, whereby many sections were added,

ment of this violation because the dumpster has been in the same location since 1975. We reverse on this issue.

¶ 2. We first consider the alleged violations regarding the paving of two triangular green areas and the conversion of retail space to storage space. The City alleges these violations on the basis that Tekram Partners deviated from the site plan without the necessary approval from the City. Tekram Partners appeal the violations, arguing that the City's zoning administrator approved of the disputed areas by issuing certificates of occupancy for Tekram Partners' Four Market Street Building. Tekram Partners argue that § 4472(a), therefore, bars the City from enforcing violations in these areas because the City failed to timely appeal the zoning administrator's decision to issue certificates of occupancy for the project. The environmental court upheld these violations, reasoning that the disputed design features deviated from the project as permitted, and that Tekram Partners had not received the necessary approval from the City for these deviations. Without analysis of the potential effect that the certificates of occupancy had in ratifying the nonconforming design features, the environmental court concluded that Tekram Partners' § 4472(a) argument was "not persuasive." After reviewing the record and the applicable zoning regulations, we hold that the environmental court's conclusion on this issue is not supported. The City's enforcement of these violations three years after its own zoning administrator issued certificates of occupancy that apparently cover the entire Four Market Street project amounts to the type of untimely

repealed, or renumbered. 2003, No. 115 (Adj. Sess.), §§ 4403-4472. We reference the current sections of Title 24 herein, which correspond to the older versions cited by the parties in their arguments.

collateral attack on the administrator's decision that is expressly barred by § 4472(a). Accordingly, we reverse the environmental court's decision to uphold these violations.

¶ 3. The alleged violations occur at the northeast corner of the Four Market Street Building, one of five structures within a larger Planned Unit Development (PUD) known as the 100 Dorset Street Complex. On March 12, 1996, the City's planning commission issued final plat approval of the PUD.[2] Among other things, the City approved a 15,000 square-foot building at Four Market Street.

¶ 4. On July 3, 1997, Tekram Partners obtained a zoning permit from the City authorizing construction of the Four Market Street Building. During construction, Tekram Partners paved two triangular areas at the northeast corner of the building and installed an overhead door for access to the part of the building that would be used for storage at this

[2] After construction of the Four Market Street Building was complete, Tekram Partners sought the City's approval for changes that had already been built. The changes were minor, and the City approved an amended final plat in a decision dated June 9, 1998. This decision is, however, technically invalid because the amended final plat was never recorded in the city land records. See 24 V.S.A. § 4463(b) (invalidating approved plats that are not recorded in the city land records) (formerly § 4416). After reviewing the arguments of both parties regarding the validity of the unrecorded plan, the differences between the plans have not been shown to have any bearing on the areas at issue in this case. Therefore, our analysis proceeds according to the development that was approved by the City's decision dated March 12, 1996.

corner. When construction was complete, Tekram Partners requested a certificate of occupancy from the City for the Four Market Street Building. Pursuant to § 27.20 of the South Burlington Zoning Regulations, once Tekram Partners notified the City that the Four Market Street project was ready for use and occupancy, the City's zoning administrator then had a duty to make a final inspection of the premises and issue a certificate of occupancy "if the project [was] found to conform with the provisions of [the] ordinance." S. Burlington Zoning Regulations § 27.202.

¶ 5. In December 1997, the City's zoning administrator conducted an inspection of the Four Market Street Building pursuant to Tekram Partners' request. On December 11, 1997, the City's zoning administrator issued three certificates of occupancy for the retail units that comprise the Four Market Street Building. Attached to the certificates was a sketch depicting the floor plan of the building and indicating the square footage of each retail unit. Also included on this sketch was an area labeled "Mechanical 580 SF," which corresponded with the northeast corner of the building where the paved areas and the overhead door had been constructed. The environmental court found that the two paved areas and the storage area would have been visible to the City's zoning administrator at the time of inspection. The court also found that at no time during the inspection did the zoning administrator alert Tekram Partners to the possibility that the paved areas or the storage area were inconsistent with the approved plan and, therefore, in violation of the zoning ordinance. The findings also indicate that Tekram Partners considered the issuance of the certificates as final approval of the Four Market Street Building for which no further certificates of occupancy were required.

¶ 6. Three years later, on September 26, 2000, the City issued a notice of violation to Tekram Partners, which alleged, among other things, that the paved areas and the storage area located at the northeast corner of the Four Market Street Building violated the zoning ordinance. Tekram Partners timely appealed the notice of violation to the City's development review board, which upheld the notice of violation. Thereafter, Tekram Partners appealed to the environmental court, which dismissed some of the violations, but upheld the violations regarding the paved areas and the storage area. Tekram Partners now appeal from the environmental court's decision.

¶ 7. We now consider whether 24 V.S.A. § 4472(a) precludes the City from enforcing the alleged violations regarding the two paved triangular areas and the storage area at the northeast corner of the Four Market Street Building. When determining whether the trial court's conclusions are consistent with the applicable law, we exercise plenary, nondeferential review. *Sigler Found. v. Town of Norwich*, 174 Vt. 129, 130, 807 A.2d 442, 443-44 (2002). We will uphold the court's conclusions if they are consistent with the controlling law and are supported by the findings. *Id.* On this issue, the environmental court's conclusion is not supported by the findings and largely ignores the effect of § 4472(a).

¶ 8. An interested person or municipality[3] may file an appeal with the appropriate panel within fifteen days of any decision or act taken pursuant to a provision of any plan or bylaw. 24 V.S.A. § 4465 (formerly § 4464). This is the exclusive remedy for contesting local zon-

---

[3] 24 V.S.A. § 4465(b)(2) provides that an interested person may mean, among other things, "[t]he municipality that has a plan or a bylaw at issue in an appeal."

ing decisions or actions. *Id.* § 4472(a). We have "strictly enforced" this exclusivity-of-remedy provision to ensure timely review of all zoning disputes, thereby assuring parties of finality. *City of S. Burlington v. Dep't of Corr.*, 171 Vt. 587, 588, 762 A.2d 1229, 1230 (2000) (mem.) (internal quotations omitted). Section 4472(a) pertains to "any decision or act taken ... with respect to ... any plan or bylaw." Thus, there is no dispute that this provision prescribes the manner of appealing a certificate of occupancy issued by the City's zoning administrator. And with the passing of three years between the zoning administrator's issuance of the certificates of occupancy and the notice of violation that gives rise to this case, the limitations period for appeal has long since expired. The dispositive issue thus becomes whether the certificates of occupancy the zoning administrator issued for Four Market Street approved the areas the City now alleges are in violation of its zoning ordinance.

¶ 9. We conclude that the certificates issued for the Four Market Street Building were the final and only certificates required under the City's approval process; therefore, they had the effect of approving the disputed design features. Tekram Partners requested and received certificates of occupancy from the City for the Four Market Street Building. The disputed design features were in plain view when the City's zoning administrator inspected the building. Although the City maintains that the approval stemming from the certificates stops at the walls of the Four Market Street Building, it has not demonstrated that a separate process existed for gaining approval of the paved areas that are contiguous with the northeast corner of the building.

¶ 10. Nothing in the findings contradicts our conclusion that the certificates of occupancy apply to the entire Four Market Street project, including the storage and paved areas. Tekram Partners have introduced valid certificates of occupancy, along with a sketch depicting the storage area at issue that was attached to the certificates when they were issued. The City contends that the certificates do not encompass the paved areas or the storage area. In responding to Tekram Partners' argument in the environmental court, however, the City failed to adduce any evidence indicating how it would otherwise approve of the constructed areas immediately surrounding the Four Market Street Building, if not pursuant to the certificates of occupancy it issued in December 1997.

¶ 11. The City's assertion that the certificates granted only partial approval to the Four Market Street Building lacks sufficient support. The City's claim is based on the fact that each certificate included a specific square footage notation, and thus approval was limited to the areas encompassed by the notation. But the environmental court found that Tekram Partners believed otherwise, and thus we can infer that the administrative officer who issued the certificates gave no indication that they did not apply to the project area around the building. Unless the areas surrounding the building were also approved for use by the City, approval for the retail space alone would have been of little use because the public would have no means to access the businesses. In the absence of evidence that the City had a separate process for granting certificates to other aspects of the project beyond the retail space, it is illogical to conclude that the certificates did not affect all aspects of the project on which use of the retail space depended.

¶ 12. Our conclusion that the three original certificates encompassed all project areas, not just the interior retail space, is bolstered by the fact that the City has not issued a violation to Tekram Partners on the basis that they are using the exterior areas without a certificate of

occupancy. Under the City's zoning regulations, it is illegal to "use, occupy or permit the use or occupancy of any land or structure or part thereof created, erected, changed, converted ... until a certificate of occupancy/compliance is issued therefore by the Administrative Officer." S. Burlington Zoning Regulations § 27.20. As the environmental court's findings indicate, the City has alleged nine violations against Tekram Partners. It is clear that the City has reviewed every aspect of the PUD in an attempt to hold Tekram Partners responsible for even the most minor and technical violations. Thus, the City's failure to cite Tekram Partners for using and occupying the nonretail project areas without a valid certificate of occupancy is a glaring omission that is at odds with its claim that the certificates of occupancy issued in December 1997 did not extend beyond the retail areas of the building.

¶ 13. The environmental court concluded that Tekram Partners had created the disputed design features without obtaining the necessary approval from the City. But the disputed design features had already been constructed when the City issued the certificates of occupancy for Four Market Street. An exclusivity-of-remedy claim is not surmounted by proving that disputed design features deviate from an approved plan. Where § 4472(a) is at issue, the nature of the disputed design features as they pertain to the plan becomes irrelevant. The question before us is not whether a zoning violation exists, but whether the City's attempt to enforce zoning violations with respect to the disputed design features is a collateral attack on the certificates issued in 1997. Tekram Partners have shown that valid certificates of occupancy for Four Market Street were issued by the City, and have asserted that these extend to all aspects of the project that were plainly visible to the issuing administrative officer at the time of his inspec-

tion. The City's evidence is insufficient to overcome this claim. Thus, we conclude that the City approved of the paved areas and the storage area, as built, when it issued the certificates of occupancy in 1997. Though this may have been an error on the administrative officer's part, § 4472(a) mandates the procedure for correcting such an error. The City's failure to follow that procedure precludes the City from enforcing violations regarding areas it approved three years earlier. Accordingly, we reverse on this issue.

¶ 14. We now decide whether Tekram Partners' failure to paint six parallel parking spaces located along the northeast corner of the Four Market Street Building violated the City's zoning ordinance.[4] We review this question of law de novo. The City alleges this violation based on the fact that the approved site plan depicts parking spaces in this location, and argues that the parking spaces do not exist until they are painted. Tekram Partners complain, however, that there is nothing on the site plan, nor is there any provision of the City's zoning ordinance, that requires parking spaces to be painted. The environmental court found that a requirement was implied in the creation of parking spaces. We affirm

---

[4] If the City has a separate approval process for parking spaces, it was not shown below. Because the six parallel parking spaces at issue here are located at the northeast corner of Four Market Street, it would seem that § 4472(a) would also bar the City from asserting a violation at this late date. In their certified questions to the environmental court, Tekram Partners did not extend the § 4472(a) argument to the six parking spaces. So we will consider their challenge to the striping violations separately.

on this issue because the disputed parking spaces are striped on the approved site plan.

¶ 15. Before the City could approve the PUD, Tekram Partners were required to submit a site plan that depicted the layout of all buildings and parking areas. S. Burlington Zoning Regulations § 26.651(c). On March 12, 1996, after reviewing the site plan, the City's planning commission issued final plat approval for the PUD conditioned upon the construction of a minimum amount of parking spaces. See S. Burlington Zoning Regulations § 26.25 (mandating and establishing minimum requirements for parking associated with land development); 24 V.S.A. § 4416 (allowing such requirements to be imposed by municipal bylaws). Once the City approved the site plan and permitted commencement of development, Tekram Partners were bound to conform its construction to the plan. See S. Burlington Zoning Regulations § 27.10 (requiring an applicant for a zoning permit to submit information that demonstrates compliance with the zoning regulations prior to the commencement of development). The approved site plan indicates that six parallel parking spaces were to be created along the northeast corner of the building at Four Market Street.

¶ 16. There is no dispute that a paved area exists at this location for six parallel parking spaces. But unless and until the spaces are painted, motorists will be unaware that this area has been designated for use as parking. More importantly, the disputed parking spaces are striped on the site plan. We conclude that the existence of stripes on the approved plan is sufficient to impose a requirement that newly created parking spaces must be painted. Accordingly, we affirm the environmental court's decision upholding this violation.

¶ 17. Lastly, we consider the City's cross-appeal regarding the placement of one garbage dumpster along the north side of the 100 Dorset Street Building, a separate building in the PUD complex. This is also subject to de novo review. The approved site plan indicates the location of four service areas along the north and east side of the 100 Dorset Street Building. The City alleges that Tekram Partners are in violation of the zoning regulations by maintaining one dumpster outside the approved service areas, in an area depicted as "Proposed 300SF Storage" on the site plan. The environmental court dismissed the violation finding no reason why this area could not be used to locate a dumpster in compliance with the approved plan. On the contrary, the approved plan provides the reason why the designated service areas are the only places a dumpster can be located in compliance with the plan.

¶ 18. Tekram Partners sought and obtained approval to locate dumpsters in the designated service areas and has used the service areas exclusively as locations for dumpsters. That the designated service areas are the exclusive locations for dumpsters should not be in question in light of Tekram Partners' submission of the PUD site plan indicating the service areas, and the City's subsequent approval of their locations. Tekram Partners complain that they have maintained a dumpster in the disputed location for over fifteen years, and therefore the City's attempt at enforcing a violation is barred by the limitations period in 24 V.S.A. § 4454 (formerly § 4496). Section 4454 does not shield Tekram Partners from an enforcement action in this case, however, because there was no basis for the City to allege a violation until 1996, when the four service areas were created and the disputed area was designated as proposed storage. Accordingly, we reverse on this issue.

*Affirmed in part and reversed in part.*