STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| **Century Partners, LP PUD** | } | **Docket No. 210-9-06 Vtec** |
| (Appeal of Century Partners, LP) | } | |
|  | } | |

### Decision on Motion for Summary Judgment

Applicant Century Partners, LP ("Century") appealed from the Decision of the Development Review Board of the City of South Burlington ("DRB") dated August 24, 2006, approving with conditions Century's application (Application #SD-06-61) for final plat approval to amend a previously-approved Planned Unit Development ("PUD") by adding 532 square feet of interior mezzanine space to a building located at 4 Market Street in South Burlington. Century is represented in this proceeding by Mark L. Sperry, Esq.; the City is represented by Amanda S. E. Lafferty, Esq.

Now pending before the Court is Century's motion for summary judgment, seeking a determination that Conditions 2(a) and 4 of the August 24, 2006 DRB Decision, relating to Century's use of "existing service areas" for the placement of dumpsters, are invalid and should be stricken as a matter of law.

### Factual Background

Based upon the parties' representations,[1] the Court concludes that the following facts are material to the legal issues raised in this appeal and are undisputed, unless otherwise noted below:

1.    Century applied in July of 2006 for approval to amend a previously permitted PUD[2] so as to allow for a previously constructed,[3] 532 square-foot mezzanine, located wholly within one of the four buildings on the previously permitted PUD. Century proposes no other renovations or improvements for the three other buildings or any exterior area on the PUD in its pending amendment application.

---

[1]  The City did not file its own Statement of Material Facts, but did file an opposition to four of Century's stated facts, none of which the Court finds material to the legal issues raised in this appeal.

[2]   The property, consisting of four buildings and a two-level parking deck, was first permitted as a PUD in 1995.

[3]   There is a suggestion in the record that this interior mezzanine was installed by one of Century's Building B tenants as long ago as 1999. The exact date of construction is not material to our analysis.

2.     The building in which the interior mezzanine is located is labeled "Building B" on the Amended Site/PUD Plan that accompanied Century's amendment application. This building is also referred to in some of Century's filings as being located at 4 Market Street, although that address is not noted on the Amended Site/PUD Plan.

3.     The three other buildings on Century's Amended Site/PUD Plan are identified as the Eastern Mountain Sports ("EMS") Building, which also contains offices and is located in the northwest corner of the PUD parcel; "Building A," located in the middle of the parcel along its western boundary; and "Building C," located in the southern corner of the parcel. As noted above, Century plans no revisions in its current amendment application to these three other buildings or the parcel surrounding them.

4.     The EMS Building has four rectangular exterior "existing service areas," two on its northerly side and two on its easterly side. The EMS Building and these four service areas are located in the corner farthest from the building in which the applied-for interior mezzanine is located.

5.     The four existing service areas on the northerly and easterly sides of the EMS Building have been used as locations for unscreened dumpsters from the time the building was constructed in 1973 until the present.

6.     The City of South Burlington Planning Commission ("Planning Commission") issued site plan approvals and amendments thereto for the EMS building in 1973, 1992, and 1993. None of those approvals addressed or required screening of the existing service areas.

7.     The property was approved as a PUD in 1995. Between 1995 and 1998, the Planning Commission issued four decisions approving PUD plans and amendments thereto. Each of the four approved plans showed the existing service areas labeled as such. None the Planning Commission approvals contained conditions requiring screening of the existing service areas, or screening of dumpsters within the existing service areas.

8.     In 2005, the DRB approved Century's application for final plat approval to amend the PUD. The approved plat shows the existing service areas labeled as such. The 2005 DRB decision contained no conditions requiring screening of the existing service areas, or screening of dumpsters within the existing service areas.

9.     No appeal was taken from the Planning Commission or DRB decisions issued between 1995 and 2005.

10. At no time has the City issued a notice of violation for the placement of unscreened dumpsters in the existing service areas.

11. The interior mezzanine space approval sought by Century in its PUD amendment application filed in July of 2006 would have no effect on visibility of the existing service areas or the dumpsters located in the existing service areas.

12. The appealed-from decision of the DRB dated August 24, 2006, approved Century's application with conditions, including Condition 2(a) ("The plan shall be revised to show all 'existing service areas' screened per Section 14.07(C) of the South Burlington Land Development Regulations as if they were dumpsters") and Condition 4 ("The applicant shall provide the Administrative Officer with a written explanation of the term 'existing service areas' which is noted on the plan prior to permit issuance").

13. Century timely filed its appeal from the August 24, 2006 DRB decision, seeking to have Conditions 2(a) and 4 removed from its PUD amendment approval. Century does not challenge any other condition imposed by the DRB.

## Discussion

The pending amendment application and appeal return this Court to a legal issue previously examined by Vermont courts. The PUD at issue in this appeal is co-owned by Century and Tekram Partners, LP. Tekram Partners is listed as a co-applicant on the application underlying the appealed-from decision here. In a previous appeal to this Court, later appealed to the Vermont Supreme Court, issues relating to "existing service areas" on the Century PUD parcel were also addressed. In In re Tekram Partners, 2005 VT 92, the Vermont Supreme Court, addressing the placement of a dumpster in a service area on the parcel, noted that "Tekram Partners sought and obtained approval to locate dumpsters in the designated service areas and has used the service areas exclusively as locations for dumpsters. That the designated service areas are the exclusive locations for dumpsters should not be in question in light of Tekram partners' submission of the PUD site plan indicating the service areas, and the City's subsequent approval of their locations." Id. at ¶ 18.

The "designated service areas" discussed in Tekram Partners are the same existing service areas at issue here. The Tekram Partners Court focused much of its analysis on the finality of unappealed municipal land use determinations articulated in 24 V.S.A. § 4472. In doing so, the Tekram Partners Court noted that

3

the certificates [of occupancy] issued for the Four Market Street Building were the final and only certificates required under the City's approval process; therefore, they had the effect of approving the disputed design features.

. . . .

In the absence of evidence that the City had a separate process for granting certificates to other aspects of the project beyond the retail space, it is illogical to conclude that the certificates did not affect all aspects of the project on which use of the retail space depended.

Id. at ¶¶ 9, 11.

The City, in its response to Century's pending summary judgment motion, asserts that Century "seeks approval of a Planned Unit Development, which requires site plan approval." To the extent that this statement is intended to recite the procedural posture of this application, it is somewhat misleading, since the pending application does not seek initial PUD approval, but merely an amendment to allow for a mezzanine wholly inside a building not associated with the existing service areas referenced in Conditions 2(a) and 4. Century first received approval for the PUD in 1995, and is now seeking only an amendment to that previously-approved PUD to allow for the 532 square-foot interior mezzanine in the building farthest from the existing service areas. We cannot discern from the facts presented here how the interior mezzanine in Building B has an impact on or is of any relevance to the questioned service areas. The City appears to assert that when an application to amend a previously-approved PUD is filed, the Planning Commission is authorized to impose any conditions on its approval, even conditions having no discernable connection with the changes contemplated in the requested amendment. The City makes no citation to a provision in its Regulations, the enabling laws of Title 24, Chapter 117, or caselaw precedent for this suggestion. We decline to adopt the City's suggestion and conclude that it is improper to impose conditions, in the context of the pending amendment application, connected to the EMS Building service areas.

The South Burlington Land Development Regulations in effect at the time of the application underlying this appeal (effective June 19, 2006) specifically exclude from site plan review "[r]enovations that are one hundred percent (100%) internal to an existing building or structure". Regulations § 14.03(B)(5). The mezzanine space for which Century seeks approval is an entirely internal renovation. Thus, the City's own Regulations exclude a PUD amendment application such as is proposed here from site plan review. Since the Regulations do not require

4

site plan review for this amendment application, it would be improper to place new conditions upon the previously approved site plan that have no relation to the pending application.

As the visual appearance of the existing service areas has no relevance to the approval of the requested interior mezzanine, and as the South Burlington Land Development Regulations specifically exempt interior renovations from site plan review, we must grant Century's motion to invalidate[4] Conditions 2(a) and 4 of the August 24, 2006 DRB Decision. Given our conclusion here, we do not reach Century's argument that the screening sought by the City would be impractical because it would protrude into and block access through the narrow lanes to the east and north of the Eastern Mountain Sports building. Nor do we reach the federal and state constitutional questions presented by Century's Question 9.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Century's motion for summary judgment is **GRANTED**. Conditions 2(a) and 4 are hereby removed from the August 24, 2006 DRB approval of Century's PUD amendment application. Given that Century raised no other challenge, this appeal is now concluded. A Judgment Order accompanies this Decision.

Done at Newfane, Vermont this 10th day of May, 2007.



Thomas S. Durkin, Environmental Judge

---

[4] Given that this is a de novo proceeding, we use the term "invalidate" loosely. The more appropriate (and more wordy) manner in which to phrase our determination here is that the South Burlington Regulations and appropriate legal precedent preclude us, as a matter of law, from imposing conditions similar to Conditions 2(a) and 4 from the August 24, 2006 DRB Decision in this specific PUD amendment application proceeding.