STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Feeley Construction Permits | } | |
| Nos. 19687 & 21006 | } | Docket Nos. 4-1-10 Vtec & 5-1-10 Vtec |
| (Appeals of Doane) | } | |
| | } | |

Decision and Order on
Appellees' Renewed Motion for Summary Judgment to Dismiss as Untimely

In January of 2010, Appellants Frederick and Heike Doane (Appellants) filed the above-captioned appeals from two concurrently issued decisions of the Development Review Board (DRB) of the Town of Colchester, ruling that Appellants' attempted appeals of two zoning permits issued to Appellees Richard and Theresa Feeley (Appellees) were untimely. Appellants are represented by Robert T. Gaston, Esq.; Appellees are represented by Matthew T. Daly, Esq. The Town is represented by Thomas G. Walsh, Esq., but has not taken an active role regarding the pending motions.

In Docket No. 4-1-10, Appellants seek to appeal the DRB's decision regarding permit #19687, issued on August 15, 2005 (the 2005 Permit), which authorized Appellees to construct a replacement shed, replacement set of stairs, and new decks on their property. In Docket No. 5-1-10, Appellants seek to appeal the DRB's decision regarding permit #21006, issued on June 26, 2008 (the 2008 Permit), which authorized Appellees to construct a second replacement deck and set of stairs on their property. As noted in this Court's June 16, 2010 decision in this matter, at 14, "[b]ecause Appellants filed their notices of appeal with the DRB years after the expiration of the appeal periods, both appeals are untimely and must be dismissed unless some other circumstance justifies the filing of a late appeal of either permit."

1

Appellees initially moved for summary judgment to dismiss both appeals as untimely. The Court's June 16, 2010 decision analyzed Appellants' apparent three main arguments and ruled that material facts were in dispute, or at least had not then been provided to the Court, to allow the Court to dismiss either appeal on summary judgment. The decision gave the parties an opportunity to provide the missing information and to renew the motion, so as to avoid an unnecessary trial to establish essentially uncontested facts. The facts as stated in the June 16, 2010 decision are repeated here as necessary, augmented by the additional information presented in connection with the parties' renewed motion memoranda.

Factual and Procedural Background

Appellees own a parcel of property located at 73 Irish Cove in Colchester, containing a seasonal dwelling or camp building that Appellees use during the summer months. Appellees' property is located on the shore of Lake Champlain in the Shoreland overlay zoning district. Appellees' camp building is located close to the elevation of the lake and is reached by a stairway leading down from the higher elevation of the roadway; the camp building itself is not visible from the higher elevation. Access to Appellees' property is by a private, dead-end road marked "Irish Cove," leading from Marble Island Road, the nearest public road.[1]

Appellants currently own a parcel of property on the shore of Lake Champlain adjacent to and northerly of Appellees' parcel, having the address of 1021 Marble Island Road, and containing a house constructed in 2008 that Appellants use during the summer months. Material facts have not been provided as to the date on which

---

[1] Neither party has provided a map or diagram showing the private and public roadways in the area nor the location of the 73 Irish Cove parcel, building, or driveway in relation either to Appellants' present property at 1021 Marble Island Road or to Appellants' former condominium unit at 1067 Marble Island Road.

2

Appellants acquired this property.[2]  Access to Appellants' property is directly from Marble Island Road.  In 2005, Appellants owned a condominium unit (Unit #4) located in a condominium development having the overall address of 1067 Marble Island Road. Appellants acquired the condominium unit in June of 2005 and were regularly present at the condominium unit during its remodeling from June of 2005 through January of 2006.

On August 11, 2005, Appellees submitted zoning permit application #19687 (the 2005 Application), seeking to replace an existing set of stairs leading along the south side of the camp building from the road down to the camp building; to replace an existing 6′ x 7′ shed with a new 8′ x 10′ shed adjacent to the stair landing and to construct an 8′ x 10′ deck over the top of the new shed; and to construct a new 10′ x 17′ deck to the south[3] of the camp building itself, with two steps leading down from it to the ground surface.

Appellees attached five diagrams or drawings to the 2005 Application form: one diagram depicting the existing layout of the property; two diagrams depicting plan views of the proposed layout, setbacks, and construction; one drawing showing the west or lake side elevation of the proposed new shed and the upper portion of the stairs; and one drawing showing the south side elevation of the whole property from the road down to the lake, including the new stairs, the new shed, the new decks, and the existing camp building.  Appellees signed the application "certify[ing] that all information, including attachments, in this application are complete, true and accurate."

---

[2]  This fact may be material to Appellants' standing in 2005 to have brought any appeal to the DRB regarding Appellees' property.

[3]  By comparison of the 2005 application with the 2008 application, it appears that the 2005 deck was the one on the south side of the camp building, at the foot of the stairs.  The 2005 application did not propose any construction on the north side of the camp building, and showed the side setback from the north property line to the camp building as measuring 57 feet.  It did not show an existing 12′ x 12′ deck to the north of the camp building, at issue in the 2008 application.

The Zoning Administrator approved the 2005 Application on August 15, 2005, granting permit #19687 (the 2005 Permit). Material facts are in dispute as to whether Appellees posted notice of the 2005 Permit within view from the public right-of-way most nearly adjacent to the subject property, as required by 24 V.S.A. § 4449(b); facts are also disputed regarding what Appellees were advised to do by the Zoning Administrator, if anything, regarding the posting requirements in 2005.

The 2005 Permit stated that "[c]onstruction shall not commence before 8/30/05," that is, during the fifteen-day appeal period for an appeal to be taken to the DRB under 24 V.S.A. § 4465(a). Interested persons seeking to appeal the Zoning Administrator's issuance of the 2005 Permit therefore had until August 30, 2005, to file a timely appeal with the DRB; no such appeal was filed within the fifteen-day period.

At some time prior to October 11, 2005, Appellees completed the proposed work. Material facts have not been provided to the Court as to Appellants' opportunity to observe any construction or presence of outdoor structures at Appellees' property, either from the land or from the lake, during mid-August to mid-October of 2005, except that they were present at their 1067 Marble Island Road condominium in the summer and fall of 2005. At no time during construction pursuant to the 2005 Permit did Appellants seek to take a late appeal of the 2005 Permit to the DRB, nor did Appellants raise the issue at that time that the posting of the notice of permit was deficient.

On October 11, 2005, the Zoning Administrator inspected the completed work and issued a Certificate of Occupancy/Compliance to Appellees under § 11.04 of the Zoning Regulations.[4] 24 V.S.A. § 4449(a)(2). No party appealed or attempted to appeal the Zoning Administrator's action in issuing the Certificate of Occupancy/Compliance, either in October of 2005 or since that time.

---

[4] The Town of Colchester Zoning Regulations are available at http://colchestervt.gov/PlanningZ/zoningregs.shtml.

Material facts have not been provided to the Court as to Appellants' presence at or use of their 1067 Marble Island Road condominium unit at any time during either 2006 or 2007. Material facts have not been provided to the Court as to Appellants' opportunity to observe the presence of outdoor structures at Appellees' property, either from the land or from the lake, during the period from mid-October of 2005 through the end of 2005, or at any time in 2006, or at any time in 2007, or during the first half of 2008. During the summer of 2008, Appellants continued to use the condominium at 1067 Marble Island Road while their 1021 Marble Island Road house was under construction on their property adjacent to Appellees' property.

On June 25, 2008, Appellees submitted zoning permit application #21006, seeking approval to "construct/replace deck – accessible + stairs." From the application and its attached documents it appears that this application related to a proposal to remove an existing 12' x 12' deck located to the north of the camp building, between it and the north side property line, and to install a 12' x 36' ± deck between the north side of the camp building and the north property line, with a tall "privacy fence" along the property line, and a short solid fence along the westerly side of the deck. Appellees attached four documents to the 2008 application form: one diagram depicting the then-existing layout of the property; one diagram depicting the proposed layout of the new north side deck, the location of the old deck to be removed, and the proposed privacy fencing and low fencing; a hand-drawn east elevation showing the proposed fencing, and a hand-written description of some of the proposed work. Appellees signed the application "certify[ing] that all information, including attachments, in this application are complete, true and accurate."

The Zoning Administrator approved the application on June 26, 2008, granting permit #21006 (the 2008 Permit). Material facts are in dispute as to whether Appellees posted notice of the 2008 Permit within view from the public right-of-way most nearly adjacent to the subject property, as required by 24 V.S.A. § 4449(b); facts are also

5

disputed regarding what Appellees were advised to do by the Zoning Administrator, if anything, regarding the posting requirements in 2008.

The 2008 Permit stated that "[c]onstruction shall not commence before 7/11/08," that is, during the fifteen-day appeal period for an appeal to be taken to the DRB under 24 V.S.A. § 4465(a). Interested persons seeking to appeal the Zoning Administrator's issuance of the 2008 Permit therefore had until July 11, 2008, to file a timely appeal with the DRB; no such appeal was filed within the fifteen-day period.

Within a month of receiving the 2008 Zoning Permit, Appellees completed the proposed work. Material facts have not been provided to the Court as to Appellants' opportunity to observe any construction or presence of outdoor structures at Appellees' property during June and July of 2008, either from the land or from the lake, other than the fact that Appellants were residing at their 1067 Marble Island Road condominium unit while their 1021 Marble Island Road house was being constructed in the summer of 2008. At no time during Appellees' construction pursuant to the 2008 Permit did Appellants seek to take a late appeal of the 2008 Permit to the DRB, nor did Appellants raise the issue at that time that the posting of the notice of permit was deficient.

On July 24, 2008, the Zoning Administrator inspected the completed work and issued a Certificate of Occupancy/Compliance to Appellees. No party appealed the Zoning Administrator's action in issuing the Certificate of Occupancy/Compliance, either in the summer of 2008 or since that time.

Material facts have not been provided to the Court as to Appellants' opportunity to observe the presence of the outdoor structures at Appellees' property, either from the land or from the lake, during the period from August of 2008 through the filing of this appeal in October of 2009. After receiving information in mid-March of 2009 that Mr. Feeley had alleged that Mr. Doane was cutting trees in the Shoreland setback, Mr. Doane inspected the Feeley property in late March of 2009; he characterized his state of mind at that inspection to the DRB as having been "surprised" by how large the decks

6

and stairs were.  In re: Property of Richard & Theresa Feeley, Permit Nos. 19687 and 21006, Findings of Fact, at 2 (Town of Colchester DRB Dec. 9, 2009).  Appellants did not attempt to file a late appeal of either permit between Mr. Doane's observations in March of 2009, and October 15, 2009, when the present two appeals were filed with the DRB.

On September 24, 2009, Appellants met with the Director of Planning and Zoning and the Zoning Administrator for the Town of Colchester, having provided them a few days in advance of the meeting with a five-page "Historic Outline" with twelve attached exhibits.  Approximately two pages of the outline dealt with the history of the Feeley construction and its asserted noncompliance with the Zoning Regulations and with the Town's "Shoreland District Stairs Interpretation."[5]  Approximately two pages of the outline dealt with the so-called "false accusations" from Mr. Feeley that Appellants had cut trees in the Shoreland zoning district, which had resulted in a 2007 and a 2009 notice of violation, both of which were later withdrawn by the Town after investigation.  The "Conclusion" section of the "Historic Outline" document characterized the document as an "aid" to the scheduled September 24, 2009 meeting, "merely highlighting interactions between" the Doanes, the Feeleys, and the Town's representatives.  To the extent that the document requested any action by the Zoning Administrator at all, that request was stated in full, at 4–5, as follows:

> The predominant point sought is the disparity in the manner in which the Town has related to Mr. and Mrs. Doane and Mr. Feeley.  The Town has not hesitated to charge Mr. and Mrs. Doane with violations based on little or no evidence whatsoever while at the same time providing Mr. and Mrs. Feeley with building permits with little or no apparent investigation in a short period of time without proper notice to the public or hearing before the [DRB], notwithstanding the inadequacies of their permit application and the extant violations resulting from the permitted construction.  In short, Mr. Feeley has falsely charged Mr. and Mrs. Doane with violations

---

[5]    This "interpretation" is stated in a July 6, 2005 memorandum from Brenda M. Green, Director of the Planning and Zoning Department of the Town of Colchester, to the Planning and Zoning Staff.

while Mr. Feeley's property stands in continuing violation. What can be done?

Two weeks after the September 24, 2009 meeting, the Town's attorney wrote to Appellants on behalf of the Town, referring to the issues discussed at the meeting and raised in the Historical Outline. The letter informed Appellants that "[p]ursuant to the exclusivity-of-remedy provision of § 4472(d), the Town and all interested parties are precluded from challenging the Feeley[s'] previous permits . . . [a]s no one took issue with the permits . . . by filing an appeal within the appeal periods," making them "final and binding." Letter from Thomas G. Walsh, Colchester Town Attorney, to Appellants (Oct. 8, 2009). The letter also stated that the 2005 and 2008 Certificates of Occupancy/Compliance had not been appealed and had become final, also precluding Appellants from challenging the two underlying permits. Id. Even if the town attorney's letter can be considered an action of the zoning administrator and therefore appealable to the DRB under 24 V.S.A. § 4465(a), the letter only explains why the permits cannot now be appealed. The letter does not refer to or deny any request for revocation of either permit or any request for enforcement of the Zoning Regulations.

On October 15, 2009, more than four years after the 2005 Permit and its related 2005 Certificate of Compliance were issued, more than a year after the 2008 Permit and its related 2008 Certificate of Compliance were issued, and approximately seven months after observing the finished construction, Appellants filed two identical "applications for appeal" (notices of appeal) with the DRB: one seeking to appeal the 2005 Permit and one seeking to appeal the 2008 Permit.[6]

---

[6] This Court's June 16, 2010 decision referred to the absence of these notices of appeal to the DRB as being missing material facts. In response to that decision, in their filing internally dated July 22, 2010, and filed with the Court on July 26, 2010, Appellees attached new copies of the two DRB decisions and copies of Appellants' two notices of their appeals from the DRB to this court (which, of course, the Court already had). They did not provide copies of the notices of appeal filed to the DRB seeking appeal of

8

However, neither notice of appeal purported to be an appeal to the DRB from any decision of the Zoning Administrator, whether declining to take enforcement action or declining to initiate revocation proceedings. Instead, under ¶ 6 of each notice, entitled "Appeal Type," which gives options for either "appeal of decision of Zoning Administrator" or "[appeal of] Notice of Violation," both of the boxes available to check off for the two types of appeal were left blank. Rather, also within ¶ 6 "Appeal Type" (but on the line for "[p]rovision of zoning ordinance in question"), Appellants stated "Appeal of Building Permit # 19687" (for the 2005 Permit) and stated "Appeal of Building Permit # 21006" (for the 2008 Permit).

On November 13, 2009, Appellants, now represented by counsel, filed a pre-hearing memorandum with the DRB. The memorandum laid out Appellants' argument that Appellees' failure to post the proper notice of the issuance of the permits automatically rendered the permits null and void; and laid out various "omissions and misstatements" in both permit applications. The memorandum argued that "if the material facts had been fully disclosed, . . . the Town would have been warranted in denying the building permits" and that the "omissions and misstatements provide the Town with . . . grounds for revoking the permits." The "Conclusion" section of the pre-

---

the Zoning Administrator's decisions, which is what the June 16, 2010 decision had stated was necessary in order for the Court to determine the scope of Appellants' appeal to the DRB. Attorney Daly's letter to the Court filed August 24, 2010, reiterated that his office had "filed the Notices of Appeal" together with the July 22, 2010 filing; however, these were not the notices of appeal to the DRB found necessary by the Court.

Similarly, although Attorney Gaston's letter filed with the Court on August 23, 2010, stated that "[e]nclosed herewith are copies of the two Appeals to the DRB by Appellants," in fact the documents that were attached were two copies of the appeal of the 2005 Permit and no copy of the notice of appeal of the 2008 Permit. Upon request of the Court staff in connection with this renewed motion, on December 14, 2010, Appellants filed a copy of the notice of appeal to the DRB filed by Appellants regarding the 2008 Permit; it is identical to the notice of appeal to the DRB of the 2005 Permit except for the difference in permit number.

hearing memorandum stated that "both of the appeal permits are null and void and should be revoked under controlling law"; that "[d]oing nothing renders the Regulations meaningless"; and that "[t]o lend meaning, enforcement i[s] required." This memorandum did not appear to make any specific request for enforcement action, except to the extent that Appellants may have thought of revocation of the permits as a type of enforcement.

The DRB held a consolidated hearing on the two appeals on November 18, 2009.[7] The DRB issued concurrent decisions on December 9, 2009 (the 2009 DRB Decisions), ruling that both appeals were untimely under 24 V.S.A. § 4465(a), and that "all parties, including the Town, are bound per [24 V.S.A. § 4472(d)]." In re: Property of Richard & Theresa Feeley, Permit Nos. 19687 and 21006, Findings of Fact, at 3 (Town of Colchester DRB Dec. 9, 2009).

Appellants appealed the 2009 DRB Decisions to this Court in the present appeals. The notices of appeal filed with this Court state that each appeal "is taken against [Appellees] and the Town of Colchester for failing to follow and enforce the Town's Zoning Regulations." Appellants filed the following ten questions as their statement of questions in each appeal:

> 1. Did [Appellees'] notice of permit fail to meet the statutory requirement because it was not within view from the public right-of-way closest to [Appellees'] property?
>
> 2. Did the Town lack jurisdiction to take any action following the defective notice?
>
> 3. Because of the lack of the statutory required notice, will [Appellants'] rights of constitutional due process or fundamental administrative fairness be denied if they are not allowed to proceed with their appeal?

---

[7] Appellants have provided a DVD copy of the local cable television's electronic recording of the hearing, which the Court has reviewed solely to determine the scope of the DRB hearing, as this is a de novo appeal.

10

4. Were there omissions or misstatements of material fact by [Appellees] or their agent in their application (or at any hearing) which would have warranted refusing the permit?

5. Because of such omissions or misstatements of fact, is the subject permit revocable at any time?

6. Was this appeal timely as to the [A]ppellants' notice to the Town of violations by [Appellees]?

7. Did the Town, through its representatives, fail to follow and enforce its own zoning regulations?

8. Did [Appellees] violate the Town's Zoning Regulations?

9. Should the permit be revoked and the property restored to its prior, or a legitimate, state?

10. Should this matter be remanded to the Town for a full hearing and consideration?

Appellees' Motion for Summary Judgment

Under the statutory scheme governing appeals to this Court, actions of the Zoning Administrator, including appeals of notices of violation issued by zoning administrators, may be directly appealed only to the DRB.[8] 24 V.S.A. § 4465. The form "application for appeal" filled out by Appellants in each of the present two cases reflects this jurisdiction by listing two options to be checked off under ¶ 6 "Appeal Type": either "appeal of decision of Zoning Administrator" or "[appeal of] Notice of Violation."

Only decisions of the DRB (or other municipal panel) may be appealed directly to this Court. 24 V.S.A. § 4471. In a de novo appeal such as this, the Court sits in place of the DRB to consider what was before the DRB, applying the substantive standards

---

[8] As well as their jurisdiction over direct appeals from actions of a zoning administrator, DRBs also have jurisdiction to perform the reviews of development applications and variances listed in 24 V.S.A. § 4460(e), not at issue in the present appeals.

that were applicable before the DRB.  V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h); see, e.g., In re Maple Tree Place, 156 Vt. 494, 500 (1991) (stating that the "court is limited to consideration of the matters properly warned as before the local board" (citing In re Torres, 154 Vt. 233, 235 (1990)); In re: Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 1–2 (Vt. Envtl. Ct. Nov. 6, 2008) (Wright, J.).

Scope of Appellants' Applications for Appeal to the DRB

Neither "application for appeal" (notice of appeal) that Appellants filed with the DRB even purported to be an appeal from any action of the Zoning Administrator.  Nor do the applications for appeal mention any request made by Appellants asking the Zoning Administrator to take any action to revoke the permits, or to take any enforcement action against Appellees for failure to comply with the Zoning Regulations.  Rather, under ¶ 6 of each application regarding "Appeal Type," Appellants stated "Appeal of Building Permit # 19687" (for the appeal of the 2005 Permit) and stated "Appeal of Building Permit # 21006 (for the appeal of the 2008 Permit).  Each notice of appeal stated the following three reasons under ¶ 7, entitled "REASON FOR APPEAL"

1) defective notice of appeal period (for decision by administrative officer – see 24 VSA sec 4464)

2) misstatement of material fact on application warranting refusal of permit (Town of Colchester Zoning Regulations, Article 11.08)

3) Violation of Town of Colchester Zoning Regulations

In its decisions on both appeals, the DRB itself characterized the appeals as being attempted appeals of the original 2005 and 2008 Permits, and not as being appeals from any subsequent request made asking the Zoning Administrator either to revoke the permits or to take enforcement action against Appellees.  In re: Property of Richard & Theresa Feeley, Permit Nos. 19687 and 21006, Findings of Fact, at 3 (Town of Colchester

12

DRB Dec. 9, 2009).

Accordingly, all that was before the DRB, and therefore all that is before this Court in this <u>de novo</u> appeal, is Appellants' attempted late appeal of the 2005 Zoning Permit and their attempted late appeal of the 2008 Zoning Permit.

### Revocation – Questions 4, 5, and 9 of the Statement of Questions

If Appellants ever requested the Zoning Administrator to commence revocation proceedings, such a request does not appear to have been ruled on by the Zoning Administrator or appealed from the Zoning Administrator to the DRB. It therefore is beyond the scope of this appeal, in which the Court only has jurisdiction to consider what was properly before the DRB.

Questions 4, 5, and 9 of the Statement of Questions in each appeal, dealing with whether Appellants made omissions or misstatements of material fact in the application process which would have warranted refusing the permit, and therefore whether either permit should be revoked under § 11.08 of the Zoning Regulations, are therefore beyond the scope of these appeals, and must be dismissed. Because they are beyond the scope of these appeals, the Court need not reach the question of whether or how § 11.08 of the Zoning Regulations is affected by 24 V.S.A. § 4455 (2009) and V.R.E.C.P. 3(9), giving this Court jurisdiction to revoke a municipal permit for, among other things, misrepresentation of material fact, but requiring such revocation to be done "on petition by the municipality and after notice and opportunity for hearing." 24 V.S.A. § 4455.

### "Enforcement" – Questions 7 and 8 of the Statement of Questions

Apparently in connection with their argument that both permits should be revoked, Appellants brought to the Zoning Administrator's attention their claims that the deck proposed in the 2008 permit encroached farther into the north side setback than did the previous deck that was being removed, and that therefore a permit for that

large a deck should not have been granted and should be revoked. They also brought to the Zoning Administrator's attention their claims that the stairways, landings and decks proposed in the 2005 permit exceeded the allowable dimensions for stairways and platforms in the Shoreland District Stairs Interpretation, and that therefore a permit for the stairs, shed, and two decks should not have been granted and should be revoked. Questions 7 and 8 of the Statement of Questions broadly ask whether Appellees violated the Zoning Regulations and whether the Town, through its representatives, failed to "follow and enforce" the Zoning Regulations.

If permits are granted in error by a zoning administrator, but those permits become final without a timely appeal, they cannot be challenged in any later proceeding, including an enforcement proceeding. 24 V.S.A. § 4472(d); City of S. Burlington v. Dep't of Corrs., 171 Vt. 587, 588-89 (2000) (ruling that 24 V.S.A. § 4472(d) prevents any sort of collateral attack on a zoning decision that has not been timely appealed); Levy v. Town of St. Albans, 152 Vt. 139, 142 (1989) (ruling that 24 V.S.A. § 4472(d) prevents a collateral attack on a final zoning decision even if that "decision was void ab initio"). The DRB, in the first instance, and this Court, in this de novo appeal, lack jurisdiction to entertain an untimely appeal. 24 V.S.A. § 4472(d); see also, e.g., Boutwell v. Town of Fair Haven, 148 Vt. 8, 10 (1987) (citing Harvey v. Town of Waitsfield, 137 Vt. 80, 82 (1979)) ("The failure to effect a timely appeal extinguishes subject matter jurisdiction."). The absence of a timely appeal prevents the DRB or the Court from considering the merits of an appeal, even if the administrative officer issued a permit in error or without the statutory or regulatory authority to do so. See In re Taft Corners Assocs., 162 Vt. 638, 639 (1994) (mem.) (citing Town of Charlotte v. Richmond, 158 Vt. 354, 357-58 (1992); Levy, 152 Vt. at 142 (1989)) (If a timely appeal of a decision of the zoning administrator is not taken, the trial court is barred under 24 V.S.A. § 4472(d) from asserting jurisdiction "even if the administrator's ruling was ultra vires."); see also In re Tekram Partners, 2005 VT 92, ¶ 8, 178 Vt. 628 (stating that courts have "'strictly

14

enforced' [the] exclusivity-of-remedy provision to ensure timely review of all zoning disputes, thereby assuring parties of finality").

Such a property may be nonconforming due to the error of the zoning administrator, as defined in the statute, 24 V.S.A. §§ 4303(13)–(16), but the nonconformity is thereafter governed by and may be regulated and expanded only under the municipal provisions regulating nonconformities required by 24 V.S.A. § 4412(7).

In the present case, unless and until Appellants are granted leave to take a late appeal of either permit, it would be premature to determine whether either permit was granted in error. Further, as no appeal or attempted late appeal has been filed from the Zoning Administrator's issuance of the 2005 and the 2008 Certificates of Occupancy/Compliance, the reasoning in <u>Tekram</u> prevents the Town from issuing a Notice of Violation or taking other enforcement action. 2005 VT 92, ¶¶ 7–13 (holding that when a certificate of occupancy has been issued for a project that is in violation of a zoning ordinance, that certificate serves as an "approval" of the violations so that 24 V.S.A. § 4472(a) precludes the municipality from bringing a later enforcement action.).

Accordingly, Question 7 of the Statement of Questions is DISMISSED. To the extent that Question 8 of the Statement of Questions relates to whether the construction proposed by either permit application meets the requirements of the Zoning Regulations in effect at the time the application was made, it must await a determination of whether a late appeal may be taken of either permit; otherwise, to the extent that Question 8 relates to any possibility of the Town's taking any enforcement action, it is also DISMISSED.

Appellants are seeking to take late appeals of the 2005 and 2008 Zoning Permits under 24 V.S.A. § 4465, more than four years late in the case of the 2005 Zoning Permit and more than one year late in the case of the 2008 Zoning Permit, and in both cases some seven months after Appellant Frederick Doane observed the completed outdoor decks, stairway and shed that are the subject of the two permits. Appellants claim that Appellees failed to post either permit within view from the public right-of-way most nearly adjacent to the subject property, as required by 24 V.S.A. § 4449(b).[9] Appellants argue both that Appellees' alleged failure to post rendered each permit "null and void," and that Appellees' alleged failure to post automatically justifies Appellants' filing late appeals of both permits.

Appellants rely on In re Torres, 154 Vt. 233 (1990) to argue that a lack of subsequent posting under 24 V.S.A. § 4449(b) renders a duly-issued zoning permit automatically "null and void." Torres does not have such an automatic effect, and cannot be extended to support Appellants' position. Indeed, such a result would be entirely unworkable, would encourage subsequent litigation between neighbors over whether and how landowners posted their zoning permits, and would undermine the principles of finality of zoning permits established in § 4472(a) and (d) and in Levy and its progeny.

Unlike the present cases, in which the permits were properly issued by the Zoning Administrator without a prior hearing and which only required subsequent

---

[9] Material facts are in dispute as to the circumstances of Appellees' posting of the permits, including whether and where they were posted, and whether Appellees were given any erroneous information by the Zoning Administrator or other Town official causing them to take any specific action regarding posting the permits. Nevertheless, the Court will proceed to analyze the requirements Appellants must satisfy to take a late appeal, because if they are not met, it will be unnecessary to take evidence on the circumstances of Appellees' posting of the permits.

16

posting rather than any prior notice or warning, Torres dealt with a type of permit requiring a prior warned hearing by the ZBA. In Torres, the Zoning Board of Adjustment (ZBA) had only considered (and had granted) an application for a home occupation permit. In the appeal brought by neighbors, the trial court ruled that the application did not qualify as a home occupation but instead required conditional use approval. However, the court proceeded to consider the merits of conditional use approval rather than remanding it to the ZBA to be properly warned and considered in the first instance for conditional use approval by the ZBA. The Supreme Court determined that the notice and hearing requirements that were a prerequisite on application to the ZBA could not have been dispensed with by the ZBA, and therefore that the trial court, sitting in place of the ZBA, also could not dispense with them. Torres, 154 Vt. at 235-36. When read together with Levy and subsequent cases citing Levy, it is apparent that Torres does not automatically invalidate actions of a zoning administrator; instead, to challenge such actions an appeal must be taken to the DRB. In the present case, even if Appellees failed to post as required by statute, the permits, as actions of the Zoning Administrator, would not be automatically null and void if they were not properly appealed.

Therefore, the Court must turn to the methodology for determining whether Appellants can file a very late appeal of either the 2005 Permit or the 2008 Permit. Although their notice of appeal and statements of questions do not cite 10 V.S.A. § 8504(b)(2)(C), which now allows the Court to determine whether "some other condition exists which would result in manifest injustice if the person's right to appeal was disallowed," Question 3 of the Statement of Questions essentially raises this argument in the terms stated in zoning cases prior to the adoption of the statute.[10] If

---

[10]     Appellees argue that the Court should not consider whether Appellants' appeal meets the statutory requirement, because the notice of appeal was not accompanied by a motion for party status under § 8504(b)(2) as required by V.R.E.C.P. 5(d)(2). However,

17

Appellants had no actual or record notice of the issuance of either zoning permit until mid-March of 2009, the Court must determine "whether due process or fundamental administrative fairness requires" them to "be allowed to contest the permit, notwithstanding the strong policy interests in finality." In re Hignite, 2003 VT 111, ¶ 8, 176 Vt. 562 (mem.).[11]

The statutory standard of "manifest injustice," 10 V.S.A. § 8504(b)(2)(C), is even more stringent than the findings of either "good cause" or "excusable neglect" required for taking a late appeal to court under V.R.A.P. 4(d). See In re Geddes Planned Unit Development, Docket No. 231-11-09 Vtec, slip op. at 7-8 (Vt. Envtl. Ct. April 20, 2010) (Wright, J.); In re: Jim Sheldon Excavating, Inc., Docket No. 54-4-09 Vtec, slip op. at 3-4 (Vt. Envtl. Ct. June 8, 2009) (Wright, J.) (determination of good cause requires the Court to find that the moving party is not at fault in failing to file a timely appeal while

---

that rule applies by its terms to "claims and challenges of party status," that is, to issues of a party's standing to bring an appeal, not to claims that the appeal itself was untimely when filed with the DRB.

[11] Appellants cite In re: Tuttle Street Right-of-Way, Docket No. 98-5-06 Vtec (Vt. Envtl. Ct. Dec. 28, 2006) (Wright, J.), aff'd In re Young's Tuttle Street ROW, 2007 VT 118, 182 Vt. 631 (mem.), in support of their argument that the Court should grant them leave to file an untimely appeal. However, in that case, slip op. at 8, the Court ruled that the fact that the petitioner had failed to appeal a 1996 action of the ZBA precluded her from raising that issue in the 2006 case before the Court, in particular because she had not "shown why she could not have sought to take a late appeal of the 1996 action [any] earlier than the present 2004 petition."

In the present case, material facts are in dispute as to why Appellants did not seek to appeal any earlier than mid-October of 2009, including as to Appellants' opportunity to observe the construction from 2005 through 2008, as well as whether Appellants would have met the other requirements of standing at the time of either permits' issuance. That is, even if Appellants show that they were unaware of the 2005 and 2008 permits when those permits were issued, the Court must nevertheless determine "whether due process or fundamental administrative fairness," Hignite, 2003 VT 111, ¶ 8, requires it to allow an untimely appeal of the permits, or whether "manifest injustice" would occur in the absence of such an untimely appeal. 24 V.S.A. § 8504(b)(2)(C).

determination of excusable neglect requires the Court to find that the fault was excusable, based on consideration of: 1) the danger of prejudice to the non-moving party; 2) the length of delay; 3) the reason for delay and whether it was within the moving party's control; and 4) whether the moving party acted in good faith). Even under an excusable neglect or good cause standard, an appellant seeking to take a late appeal must explain the delay, including any reasons why an appeal was not filed as soon as possible after the appellant became aware of the possible need or opportunity for an appeal. See Sheldon Excavating, Docket No. 54-4-09 Vtec, slip op. at 5.

In the present case, material facts are disputed, or have not yet been presented, that could resolve Questions 3 and 6 of the Statement of Questions. In particular, Appellants have not shown why they did not attempt to file a late appeal of either permit during the time that construction was ongoing pursuant to either permit, have not shown what efforts they made to become aware of construction on Appellees' property prior to mid-March of 2009, and especially have not shown why they waited seven months (thirteen or fourteen times the normal appeal period) to attempt to file the appeals with the DRB. In the absence of any explanation that amounts to manifest injustice if the appeal were not allowed, both appeals are untimely. In addition, Appellants have not shown that, in 2005, the construction of the south side stairway, decks, and shed on Appellees' property had any "physical or environmental impact on their interests" that would have given them standing to bring the appeal of the 2005 Permit, even had they seen any posted notice from the public road. 24 V.S.A. § 4465(b)(3).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellees' Renewed Motion for Summary Judgment is GRANTED in favor of Appellees to DISMISS Questions 4, 5, 7, and 9 of the Statement of Questions in each appeal, and to DISMISS Question 8 to the extent that it relates to the possibility of the

Town's taking any enforcement action. Appellees' Renewed Motion for Summary Judgment is DENIED in that some material facts are in dispute as to Questions 1, 2, 3, 6, and 10 of the Statement of Questions, and in that Question 8, as it relates to whether the construction proposed by either permit application meets the requirements of the Zoning Regulations in effect at the time the application was made, must await the determination of whether either of the appeals was timely.

A telephone conference has been scheduled (see enclosed notice). At the conference, the parties should be prepared to discuss setting a schedule for mediation in this and the newly filed Act 250 case involving the same parties, as well as to determine the time required for any evidentiary hearing necessary to determine whether Appellants should be allowed to file a late appeal of either permit. In particular, the parties should be prepared to discuss whether Questions 3 and 6 as to the timeliness of either appeal should be heard and resolved first, that is, to determine whether Appellants should be given leave to take the late appeals, even assuming that the posting did not meet the requirements of the state statute.

Done at Berlin, Vermont, this 3rd day of January, 2011.


_____
                    Merideth Wright
                    Environmental Judge

20