STATE OF VERMONT

SUPERIOR COURT                              ENVIRONMENTAL DIVISION
Environmental Division Unit                 Docket No. 54-5-15 Vtec

| | |
|---|---|
| Pintair Discretionary Permit | DECISION ON MOTION |

Applicants Alex and Kathy Pintair own a single-family home on a 1.7-acre lot at 7997 Williston Road in the Town of Williston, Vermont (Town). Applicants propose to subdivide the property into a .6-acre lot and a 1.1-acre lot. The existing home will be on the .6-acre lot, and Applicants propose to build a duplex on the newly created 1.1-acre lot (the Project).

Applicants sought a "growth management allocation"—a prerequisite for a discretionary permit—from the Town's Development Review Board (DRB). The DRB granted the allocation on March 24, 2015. A group of Williston residents—Kevin Brochu, Zuzana Brochu, Donald Luby, Ingrid Luby, and Thomas Munn (Neighbors)—appealed[1] the decision to this Court, objecting to alleged procedural irregularities in the application process. The Town has moved for summary judgment on all issues in Neighbors' Statement of Questions. Neighbors oppose summary judgment. They have also filed a motion to dismiss the Town's summary judgment motion because it was filed past the deadline for pre-trial motions in the Court's scheduling order for this appeal. Applicants are represented by Michael D. Johnston, Esq. The Town is represented by Paul S. Gillies, Esq. Neighbors are self-represented.

**Factual Background**

In the Town's motion for summary judgment, the Town disputes many of the factual assertions made in Neighbors' Statement of Questions. Because the facts are disputed, we accept as true all of Neighbors' factual allegations and give them the benefit of all reasonable doubts for the purposes of deciding this motion. V.R.C.P. 56(a); Robertson v. Mylan Laboratories, Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. The following account therefore reflects Neighbors' version of the disputed facts. While we are required to accept as true all of

---

[1] Donald and Ingrid Luby originally appeared as appellants in this matter. In a July 13, 2015 entry order, the Court dismissed them as Appellants because they had not participated in the municipal proceedings, which is required for an appeal under 24 V.S.A. § 4471(a). The Court nonetheless allowed them to continue to participate as interested persons in this appeal. For simplicity, the Court will refer to appellants and the interested parties collectively as "Neighbors."

Neighbors' factual assertions, Neighbors did not provide a full factual account in a separate statement of material facts, and their filings therefore do not cover many of the background facts relevant to this motion. For many of the relevant background facts, we have therefore relied on either the Town's statement of facts[2] or on documents attached as exhibits to the parties' filings. See V.R.C.P. 56(c)(3) ("The court need consider only the materials cited in the required statements of fact, but it may consider other materials in the record.").

1.      Applicants Alex and Kathy Pintair own a 1.7-acre lot with a single-family home at 7997 Williston Road in Williston, Vermont. The property lies in Williston's Village Zoning District (VZD) and in the Williston Village National Register Historic District.

2.      Applicants propose to subdivide the property into a .6-acre lot (with the existing home on it) and a new 1.1-acre lot. They propose to build a "duplex" (i.e., a single structure with two dwelling units in it) on the 1.1-acre lot.

3.      Under Williston's Unified Development Bylaw ("Bylaws"), applicants for residential subdivisions in the VZD must obtain a discretionary permit. Bylaws § 4.3.3.2. Before a residential subdivision applicant can apply for a discretionary permit, it must first go through "pre-application review" and then receive a growth management allocation from the DRB. Bylaws § 6.4. Pre-applications are referred to the Historic and Architectural Advisory Committee (HAAC) where appropriate. Id. § 6.3.5.

4.      The Town Department of Public Works reviewed the Project on October 30, 2014. It had no objections to the Project.

5.      The Town Fire Department reviewed the Project on November 6, 2014. It had no objections to the Project.

6.      On November 17, 2014, the HAAC met to discuss Applicants' pre-application.

---

[2] We rely on the Town's statement of facts and motion reluctantly. The Town's motion and statement of facts, with few exceptions, is missing specific citations to the record, which are required under V.R.C.P. 56(c)(1)(A)—most of the facts have no citation at all, and those that do have citations to whole documents, not to specific page or paragraph numbers (with a few exceptions). The Town's filings also contain a number of obvious inaccuracies and internal inconsistencies, which Neighbors identify in their responsive filings. The requirement of specific citations to the record is intended to benefit the Court by sparing scarce judicial resources. But it also benefits attorneys by requiring them to ensure that their factual assertions are actually supported. Though the self-represented Neighbors did not adhere to other formal requirements of Rule 56, they did manage to provide specific page number citations to each document they referenced in their responsive motions. Had the Town's attorney also adhered to this requirement, he likely would have discovered the mistakes in his motion and avoided submitting plainly untrue factual assertions to the Court. While these factual inconsistencies ultimately do not bear on our summary judgment decision (because we conclude that the Town is entitled to judgment even under Neighbors' account of the facts) we nonetheless note the disregard for accuracy and the Vermont Rules of Civil Procedure in the Town's filings.

7.     At the November 17, 2014 HAAC meeting, Matt Boulanger, the Town's Senior Planner, described the Project as a residential subdivision with a "single-family home to be developed with an accessory dwelling unit." He also made it clear that Applicant would be renting both units out, so neither unit would be owner-occupied.

8.     According to Mary Jo Childs, a member of the HAAC, "[t]he project was represented as a single-family home with an accessory dwelling unit, not as a duplex."

9.     The HAAC discussed the height of the building relative to the existing historic single-family home, as well as the driveway design. The HAAC made general design recommendations to the DRB for the DRB's pre-application review.

10.     The DRB held a meeting to review Applicants' pre-application on November 25, 2014.

11.     In the meeting minutes, the Project is described as "a 2-lot subdivision of 7997 Williston Road, a 1.7 acre lot with an existing dwelling on proposed .6 acres and for a single family dwelling with an accessory dwelling on the 1.1 acres . . . ."

12.     At the November 25, 2014 meeting, Mr. Boulanger described the two units to be added to the 1.1-acre lot as "a primary unit with a detached accessory dwelling." Throughout the rest of the minutes, however, the discussion seems to refer to a single structure.

13.     At the DRB meeting, Mr. Pintair noted that "[h]e felt a duplex wouldn't be in keeping with the village character."

14.     Mr. Boulanger and Mr. Pintair made clear at the meeting that the primary dwelling unit would not be owner-occupied.

15.     The DRB did not make a pre-application decision at the November 25 meeting. It continued the pre-application review until December 9, 2014.

16.     At the December 9, 2015 meeting, the DRB voted to allow the Project to move forward to growth management review. The DBR did not require Applicants to submit a specific plan with their discretionary permit application.

17.     On March 24, 2015, the DRB met to review applications for growth management allocations for 2015.

18.     An out-of-date version of Section 42.3.2 (which governs setbacks in the VZD) was posted on the Town's website before the growth allocation meeting.

19.     The Williston Bylaws require an applicant to submit a "growth management questionnaire" before the growth management allocation meeting. Bylaws § 11.4.2.2. The DRB uses the questionnaire to assign a point value to each application, and it allocates residential units based on a project's score. See id.; § 11.4.2.4. A project that scores below a

30 on the application will generally not receive a growth management allocation, except that the DRB may award up to four dwelling units to minor residential subdivisions, regardless of their score. See id. §§ 11.5.1.1, 11.2.2.2.

20. The growth management questionnaire used by the Town has a question titled "Housing Diversity." It asks, "How many of each of the different housing forms will be included in the proposed subdivision?" The form then lists "conventional single-family," "manufactured home," "duplex," and "multiple-family (three or more units in a building)," with blank spaces next to each for the applicant to check.

21. Applicants prepared two growth management questionnaires. The growth management questionnaire used by the DRB in evaluating the Project did not have any response to the housing diversity question. The growth management questionnaire for the Project currently on file with the Town has "duplex" checked under the housing diversity question.

22. The Town did not award any points to Applicants for housing diversity, and Applicants only earned 16.5 points in total for their growth management application. The Town awarded Applicants a two-unit allocation under the exception for minor subdivisions. Bylaws § 11.2.2.2.

23. At the growth management allocation meeting, Mr. Pintair confirmed that he sought to build "one duplex building" on the newly created 1.1-acre lot.

24. Neighbors appealed the growth management decision on May 14, 2015. The Court issued a scheduling order for this appeal with a deadline of August 14, 2015 for pre-trial motions deadline. The Court ordered parties to file dates of unavailability for October and November 2015. The Town filed this summary judgment motion on September 11, 2015.

## Discussion

In this appeal, Neighbors challenge the Williston DRB's decision to award a two-unit growth management allocation to Applicants for their proposed subdivision and duplex. In their Statement of Questions, Neighbors raise eleven procedural challenges to the application and decision. Neighbors' eleven questions boil down to six major arguments:

1. The Project Applicants proposed in their growth management application differs substantially from the project proposed in the pre-application phase, and this renders the pre-application review, the HAAC and other Town entities' review, and the public hearing on the growth management application procedurally invalid (Questions 1–3).

2. There is a discrepancy between the growth management questionnaire presented to the DRB and the questionnaire currently on file with the Town, and this renders the growth management allocation procedurally invalid (Questions 4 and 5).

3. Applicants' failure to answer a question regarding housing diversity on their growth management questionnaire renders their growth management application incomplete and the DRB decision invalid (Questions 6 and 7).

4. A driveway relocation permit previously granted to Applicants for the Project property is invalid, which makes it ineligible for growth management allocation (Questions 8 and 9).

5. The Town provided the wrong version of the Bylaws to the public in advance of the growth management allocation meeting, which invalidates the growth management allocation (Question 10).

6. This Court should require a "specific plan" for the Project, given that it is located in the Williston Village National Historic District (Question 11).

The Town has moved for summary judgment on all six issues. The Court will grant summary judgment if, after making all reasonable inferences in Neighbors' favor, there is no genuine dispute of material fact and the Town is entitled to judgment as a matter of law. V.R.C.P. 56(a); Robertson v. Mylan Laboratories, Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

*a. Neighbors' motion to dismiss*

Neighbors responded to the Town's summary judgment motion, but they also moved to dismiss the motion as untimely. The Town moved for summary judgment on September 11, 2015. The Court's scheduling order for this matter set a pre-trial motions deadline of August 14, 2015. While the Court has power to dismiss the motion for summary judgment as untimely, see V.R.C.P. 16.2; Carpenter v. Cent. Vt. Med. Ctr., 170 Vt. 565, 568 (1999) (mem.), we choose not to do so here. When the Town filed its motion, the parties had submitted dates of unavailability, but no date for trial had been set. The motion does not appear to have prejudiced Neighbors because they had ample time to respond. We will therefore consider the motion and we **DENY** Neighbors' motion to dismiss.

*b. Substantial change in Project*

In their Questions 1–3, Neighbors argue that Applicants presented their Project as "a single-family dwelling with an accessory unit" in the pre-application phase and as a "duplex" in the growth management phase, and that this substantial change should invalidate the growth management allocation.

It is not entirely clear from Neighbors' filings what they think the practical difference between a "single-family dwelling with an accessory unit" and a "duplex" is. The Bylaws define

"accessory dwelling" as "an independent efficiency or one or two bedroom dwelling that is located within or appurtenant to and on the same lot as an owner-occupied single family dwelling . . . ." Bylaws § 46.3.4. The Bylaws do not define "duplex," but in common speech (at least in New England[3]) it means a single building with two dwelling units. Based on these definitions, both phrases mean a single structure divided into two dwelling units. Assuming Applicants used the phrase "accessory dwelling" as it is used in the Bylaws, they essentially proposed a "duplex" at the pre-application meeting, but just used different terminology.[4]

Nevertheless, Neighbors, Mr. Pintair, and at least one member of the HAAC seem to think that there is a significant difference between the two expressions.[5] We infer from Neighbors' exhibits that they may have originally perceived the Project as a single-family house with a *detached* accessory unit,[6] and become upset when Applicant proposed a "duplex" at the growth management stage. For the sake of giving Neighbors the benefit of every inference, we will assume that Applicants proposed as a single-family home with a detached accessory unit at the pre-application phase, and changed the proposal to a duplex at the growth management phrase.

Neighbors' basic argument is that, because the changed "duplex" version of the Project did not go through pre-application review and review by the HAAC, and residents did not have a chance to comment on the duplex Project before it was presented for growth management allocation. This, they argue, should invalidate the growth management allocation.

In essence, Neighbors are arguing for a mini version of our remand doctrine, which holds that when a project undergoes truly substantial changes during Environmental Division proceedings, we must remand the application back to the relevant municipal panel because we only have jurisdiction to review the same "projects" that were reviewed below. See, e.g., In re All Metals Recycling, Inc., 2014 VT 101, ¶ 19, 197 Vt. 481. The remand doctrine is also meant to protect parties not before the court, who may have decided not to participate in proceedings on the basis of original project designs, only to find that revised projects will impact them

---

[3] In other parts of the country, it usually means a single apartment with two stories.

[4] Mr. Pintair made clear at the pre-application meeting that the new structure would *not* be owner-occupied.

[5] In the first pre-application meeting, Mr. Pintair stated that "a duplex wouldn't be in keeping with the village character." Mary Jo Childs, a member of the HAAC, believed that "[t]he project was represented as a single-family home with an accessory dwelling unit, not as a duplex."

[6] While the minutes from the November 25, 2014 pre-application meeting seem to mostly refer to a single structure to be built on the newly created 1.1-acre lot, at one point in the meeting Mr. Boulanger does refer to a "detached" accessory unit.

substantially.  In re Lathrop Ltd. P'ship, 2015 VT 49, ¶ 107.   On the other hand, we strive to promote compromise, and we recognize that the land use process must be flexible and responsive in order to avoid "procedural ping pong match[es]." See In re All Metals, 2014 VT 101, ¶ 19 (quoting In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103).   We are therefore more likely to require remand for changes that significantly impact parties not before the court, but are less likely to require remand for changes made in response to specific objections.  Lathrop, 2015 VT 49, ¶¶ 102, 107.

In principle, we agree in with Neighbors' legal premise.[7]   Under the Bylaws, a residential subdivision in the VZD requires a discretionary permit.  Bylaws §§ 4.1.2, 4.3.3.2.  The Williston discretionary permit process differs from many other towns' processes in that there is a distinct (and mandatory) series of permit phases a project must go through: an applicant must first go through pre-application review, then receive a growth management allocation, and then apply for a discretionary permit.  Id. §§ 6.1.1, 6.4.  At the pre-application stage, the HAAC must also review proposals development in historic areas.  See id. § 6.3.5.  Therefore, just as we lack jurisdiction over applications that have not been reviewed by municipal panels below, see In re All Metals, 2014 VT 101, ¶ 19, the DRB cannot make a growth management allocation to a Project that has not been through pre-application review, including review by the HAAC.  See Bylaws § 6.2.10.1.  A substantial change to a project after pre-application review would mean that the "project" proposed in growth management review had not been through pre-application in the previous year, rendering it ineligible for growth management.

We also find that the same considerations relevant in the remand doctrine—prejudice to parties not before the court and the need for compromise and flexibility—are relevant in substantial changes in the discretionary permit process.  Pre-application review is an appealable decision.  See 24 V.S.A. 4471.  A substantial change in a proposal between the pre-application and growth management phases could prejudice neighbors, since they may have chosen not to participate in or appeal pre-application review on the understanding that project would not impact them. On the other hand, just as we encourage applicants to change their proposals in response to feedback from other parties during environmental division proceedings, see In re

---

[7] We do not agree, however, that substantial changes to a proposal would require review by other town departments. While the Bylaws provide for departmental review before the final discretionary permit is issued, the Bylaws do not require other Town and state entities to review projects at the pre-application or growth management phases (though the Public Works Department and Fire Department appear to have done so here). See Bylaws § 6.5.1.  Because review by other Town departments does not appear to be mandatory at the pre-application phase, it is irrelevant to this growth management appeal whether the fire chief, VTrans, or police chief had an opportunity to review the "duplex" proposal before growth management review.

Lathrop Ltd. P'ship, 2015 VT 49, ¶ 102, the Bylaws appear to contemplate that applicants will make changes to their applications during the pre-application and growth management phases in response to input from the HAAC. See id. § 6.4.8. In Williston, when a project undergoes truly substantial changes with significant off-site impacts between pre-application and growth management phases, and especially if those changes are not made in response to feedback in the pre-application process, the revisions must go through fresh pre-application review.

But, while we agree with Neighbors' legal premise, we find the changes in this application were not substantial. A change from two structures to one does not increase the scope of a project. If anything, it decreases it. And it is hard to see how changing the proposal from detached structures to a "duplex," without any other changes such as an increase in square footage, would necessarily have any negative off-site impacts. Neighbors have not asserted any harm that the alleged change will cause. Because we find, based on the facts asserted by Neighbors, that the alleged change between pre-application and growth management phases did not prejudice Neighbors, we grant summary judgment to the Town under Questions 1, 2, and 3.

### c.    Discrepancies in the growth management questionnaire

In their Questions 4 and 5, Neighbors argue that the discrepancies between the growth management questionnaire reviewed at the DRB hearing and the questionnaire on file with the Town should render the questionnaire and the growth management allocation invalid.

In order to apply for a growth management allocation, applicants must submit a completed "growth management questionnaire" to the town. Bylaws § 11.4.2.2. Responses on a growth management questionnaire are binding. Id. Here, it appears that Applicants prepared two growth management questionnaires. On one, Applicants responded to a question about "housing diversity" by indicating that the Project was for a "duplex." On another, Applicants left the housing diversity question blank. There appears to be no dispute that the DRB relied on the latter in the growth management meeting. Compare Neighbors' Response to the Town's Mot. for Summ. J. at 3, filed Oct. 6, 2015 with Town's Statement of Material Facts ¶ 9, filed Sept. 11, 2015. We therefore agree with Neighbors' general contention that the "official" version of the growth management questionnaire should be the questionnaire reviewed at the March 24, 2015 DRB meeting, i.e., the version of the questionnaire with no response to the "housing diversity" question. But the fact that two versions of the questionnaire exist does not invalidate the DRB's growth management proceedings or the DRB's decision in those meetings.

As long as the version reviewed by the Town was submitted to the Town fifteen days before the March 24, 2015 growth management meeting (and Neighbors do not allege otherwise), Applicants conformed to Section 11.4.2.2. We therefore **GRANT** summary judgment to the Town on Questions 4 and 5.

### d. Completeness of the "Housing Diversity" section

In their Questions 6 and 7, Neighbors argue that Applicants' non-response to the housing diversity question on their questionnaire should render their application (and the DRB's growth management decision) invalid, pointing to the requirement in Section 11.4.2.2 of the Bylaws that "Applicants must return their *completed* growth management questionnaires at least 15 working days before the scheduled hearing" (emphasis added).

The purpose of the growth management questionnaire is not to elicit binding responses generally, but to allow the DRB to award points to the applicant under various housing criteria based on binding responses. Cf. Bylaws § 11.4.2.4; see also id. § 11.7 (listing criteria). If applicants do not claim points under a criterion (by leaving the response blank), they bear the consequences of the lost points. An application is not invalid if questions are left blank, it will simply receive a lower score. We therefore conclude that Applicants' growth management application is not invalid because it did not answer the housing diversity question, and we **GRANT** summary judgment to Town under Questions 6 and 7.

### e. Driveway relocation permit

In their Questions 8 and 9, Neighbors argue that Applicants received an administrative permit on June 17, 2013 to relocate the driveway on the Project property, and that this administrative permit was inadequate. They argue that defects in this earlier permit should invalidate the Project's growth management allocation.

Neighbors have not submitted any facts or argument surrounding this permit. But even assuming the administrative permit was improperly granted, this would not invalidate Applicants' growth management allocation. If a Town issues a permit improperly, the only remedy is a timely appeal under 24 V.S.A. § 4472(a); In re Tekram Partners, 2005 VT 92, ¶ 8, 178 Vt. 628. If no one appeals the permit, the permit—even if it was defective—becomes final and binding, and cannot be attacked either directly or indirectly at a later proceeding. 24 V.S.A. § 4472(d); Tekram, 2005 VT 92, ¶ 8.

Neighbors are arguing that the growth management allocation should be denied because of defects in an existing, final permit. This is an impermissible collateral attack. See 24

V.S.A. § 4472(a); In re Permit, 2012 VT 42, ¶ 6, 191 Vt. 483 (dictum) (opining that denying a permit on the basis of defects in other final and binding permits is a collateral attack). Because the 2013 driveway permit was not appealed, it is final and binding, and Neighbors cannot raise arguments about its defects in this appeal. We therefore grant summary judgment to the Town under Questions 8 and 9.

   f.   Availability of correct Bylaws

   In their Question 10, Neighbors ask "Does the fact that the wrong version (in materially relevant ways) of the Town Bylaws was made available to the public, and that no additional time was granted despite a request from interested parties once the proper version of the Bylaws was established, render the public process irregular and warrant granting interested parties additional time to comment?" We interpret Neighbors' Question 10 to argue that the growth allocation proceedings were invalid because they were "irregular," and to ask this Court to remand this appeal to the DRB to give neighbors additional time to comment before the DRB.

   Neither party offered much argument on this Question. In the Town's filings, it stated that an out-of-date version of Section 42.3.2 (which governs setbacks in the VZD) was posted on the Town's website before the growth allocation meeting in the spring of 2015. Town's Statement of Material Facts ¶¶ 14–16. In the Town's motion, the Town argues only that "Section 42.3.2 of the bylaw is not relevant to the Growth Management Allocation process in this appeal." Towns' Mot. for Summ. J. at 4, filed Sept. 11, 2015. Neighbors did not address Question 10 at all.

   Towns are required to make up-to-date copies of their bylaws available to the public at Town clerk's offices during normal business hours. 24 V.S.A. § 4445. There is no statutory requirement that Towns keep up-to-date copies of their bylaws on their websites, though many towns voluntarily do so as a service to their residents. When towns undertake this service, it is possible that they might prejudice residents by posting inaccurate versions of their bylaws. For instance, residents might not participate in local proceedings because they believe a project does comply with the bylaws, which would mean that they lose the right to appeal, see 24 V.S.A. § 4471(a); they might decide not to appeal a decision because they believe a project complies with the bylaws; or, in the case of an on-the-record review, they might not raise certain arguments in municipal proceedings, which would bar them from raising the arguments before this Court. Where a town knowingly misleads participants, and where participants are

actually prejudiced, we may waive certain appeal requirements to allow residents to raise arguments in the environmental division. See, e.g., In re Walsh, No. 122-06-09 Vtec, slip op. at 10–11 (Vt. Envtl. Ct. Dec. 9, 2009) (Wright, J.). But even in extreme cases, we would not invalidate proceedings below or remand matters to a Town—the only relief we would grant is an opportunity to raise arguments before the environmental division. Cf. id. Since Neighbors already have that opportunity, and since the relief they seek in Question 10 is not available, we **GRANT** summary judgment to the Town on Question 10.

> g.    *Requirement of specific plan*

In Neighbors' final Question, they argue that the Town should have required Applicants to prepare a "specific plan" for the Project, given that it is in the Williston Village National Historic District.

A "specific plan" is an alternative regulatory tool under the Williston Bylaws that is intended to replace the more conventional "planned unit development" process used in other towns. Bylaws § 9.1.1. Unlike a planned unit development, which operates like a permit, a "specific plan" is an actual amendment to the Bylaws that authorizes a particular project proposed by a particular applicant. The purpose of the specific plan is to encourage applicants for large commercial developments to work with the Town to develop a detailed plan, and then to amend the Bylaws to authorize that plan (and only that plan). See Bylaws §§ 9.1.2, 9.1.1.1.

An applicant can decide, on its own, that it wants to file a specific plan. See Bylaws § 9.3.1 ("Development of a specific plan begins with an application from one or more landowners to the Planning Commission."). The DRB can also recommend, at the pre-application phase, that an applicant prepare a specific plan before filing for a discretionary permit. See Bylaws § 6.2.8.4. The DRB does not address specific plans during growth management allocation. See generally Bylaws ch. 11. The DRB made its final pre-application review on December 9, 2015, and it chose not to require a specific plan for the Project. Neighbors did not appeal this decision. It is therefore final and binding, and cannot be challenged in this appeal. See 24 V.S.A. § 4472(a). We therefore **GRANT** summary judgment to the Town on Question 11.

**Conclusion**

We conclude that, though the Town's motion for summary judgment was not timely filed, there was no prejudice to neighbors in considering it, and therefore **DENY** Neighbors' motion to dismiss the summary judgment motion. Because we conclude that, even giving

Neighbors the benefit of every inference, the Town is entitled to judgment as a matter of law, we **GRANT** summary judgment to the Town on all issues.

A judgment order accompanies this decision.

Electronically signed on May 27, 2016 at 02:32 PM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division