VERMONT SUPERIOR
COURT

32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Environmental Division

| | |
|---|---|
| **In re Benoit Conversion Application** | **Docket No. 143-7-08 Vtec** |
| **In re Appeal of Benoit & Kane** | **Docket No. 148-8-04 Vtec** |
| **City of St. Albans** **v.** **Hayford, et. al.** | **Docket No. 126-7-04 Vtec** |

# DECISION ON MOTION TO RECONSIDER

This matter originally came to this Court on a stipulated motion for relief from judgment, filed by the Town of Saint Albans and Deborah and Gregory Benoit (collectively "the parties."). The parties sought to modify a 2007 decision, City of St. Albans v. Hayford & Benoit, No. 126-7-04 Vtec, slip op. (Vt. Envtl. Ct. Feb. 17, 2007) (Wright, J.) ("Hayford I"), affirmed by the Vermont Supreme Court in 2008, City of St. Albans v. Hayford, 2008 VT 36, 183 Vt. 596 (2008) ("Hayford II") that enjoined the use of the Benoits' property for more residential units than the zoning laws permitted at the time. In Hayford I, the Benoits and their co-defendants from whom they bought the property, the Hayfords, argued that the City's enforcement action was barred by the relevant statute of limitations. While both the Environmental Court and the Supreme Court held against them on this legal issue, they revived this argument through their motion for relief. They claimed that allegedly relevant new law established by the Supreme Court in In re 204 North Avenue NOV, 2019 VT 52, 210 Vt. 572 ("204 North Ave") warranted relief from the earlier judgment.

We first note that our Supreme Court has consistently directed that Rule 60(b) should be "applied guardedly and only in extraordinary circumstances, . . . [given] the important interest in

finality of judgments." Miller v. Miller, 2008 VT 86 ¶27, 184 Vt. 464 (2008) (internal citations omitted). Mindful of this caution and concluding that the parties misapprehended the relevance of 204 North Ave to the decisions in Hayford I and II, we denied the original motion for relief. In re Benoit Conversion Application, Nos. 143-7-08 Vtec, 148-8-04 Vtec, 126-7-04 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Apr. 20, 2021) (Durkin, J.). The Benoits have now moved unopposed for relief from that order under V.R.C.P. 60(b)(1), which we construe as a motion to reconsider since the order was not itself a final judgment and, in any event, was issued within the 28 days prior to the motion being filed.

We remain concerned about the propriety of revisiting a fourteen-year-old judgment, particularly on a motion to reconsider and particularly after the 2007 judgment was affirmed by the Vermont Supreme Court. We initially expressed that concern during the initial conference on the reopening of this matter, held on February 8, 2021, and repeated this concern in our April 2021 Entry Order addressing the parties' Stipulated motion for relief. In re Benoit Conversion Application, Nos. 143-7-08 Vtec, 148-8-04 Vtec, 126-7-04 Vtec, slip op. at 8 ("At a status conference conducted on February 8, 2021, this Court directed the parties to address the Court's authority to modify a judgment when the trial court decision was previously affirmed by the Vermont Supreme Court."). Neither the parties, nor this Court, directly addressed this concern, which may well be insurmountable. Nonetheless, so as to provide the parties with guidance on the Court's analysis of the presented legal issues, we move to a consideration of whether the Benoits' motion for reconsideration should be granted.

We first acknowledge that reconsideration is generally within a trial court's discretion. We therefore have reviewed the additional arguments in the Benoits' supplemental memorandum and motion for reconsideration closely. We conclude, however, that the Benoits have not presented a sufficient basis for amending or reversing our April decision, and thus their motion must be denied. However, we take this opportunity to clarify a few potential points of confusion regarding this Court's 2007 holdings in Hayford I and the cases leading up to it and to elaborate upon our understanding of what the Supreme Court did—and, equally importantly, did not—change in the interpretation of municipal zoning laws through its decision in the 204 North Ave appeal.

**Background**

Hayford I itself had a complex set of facts and a convoluted procedural history. We surveyed both at length in our April order. However, both for convenience, and to clarify several remaining points of understandable confusion, we review them again here: first, the history of the property (as found in Hayford I and II); the relevant zoning laws; and the municipal proceedings and appeals that pre-dated Hayford I. Then we review the legal conclusions in Hayford I and in our April decision. In both instances, we review only the facts and conclusions most pertinent to the currently pending motion.

i.      History of the property and enforcement.

The Hayfords purchased the property at 53 High Street ("the property") in 1976, when it consisted of a main apartment building with four units and a rear building used as a print shop and subsequently a nursery school. Hayford II, 2008 VT 36, ¶ 2. At that time, the City of St. Albans ("the City") had not yet adopted a zoning ordinance. In 1977, the City adopted its first zoning ordinance, which required a zoning permit from the Zoning Administrator for any permitted uses, and site-plan approval from the planning commission for any uses other than a single-family or two-family residence. Id. at ¶¶ 2-3; *see also* 1977 City of St. Albans Zoning Ordinance §§ 205, 401 ("1977 Ordinance"). The 1977 Ordinance made multi-family use a permitted use in the district containing the property and established minimum lot-size and lot area-per-unit requirements for residential properties. Hayford I, No. 126-7-04 Vtec at 3–4 (Feb. 17, 2007)

In 1986 the Hayfords converted the four residential rental units in the apartment building to five units and in 1987 they converted the rear building from a nursery school into a sixth residential unit. In both instances they failed to obtain a zoning permit and site-plan approval for the changes in use. Hayford II, 2008 VT 36, ¶4.

In 1998 the City adopted its Land Development Regulations ("1998 Regulations") that changed the relevant standards for the property in several respects. Most notably, the 1998 Regulations made multi-family use a conditional use in the property's zoning district and increased the minimum area per-unit requirements for residential uses. Under these new area-

per-unit, or density requirements, the property could legally support only four residential units. Hayford I, No. 126-7-04 Vtec at 2, 5-7 (Feb. 12, 2007).

Soon thereafter in 1998, the Hayfords applied to the Zoning Administrator for a Certificate of Occupancy for the six units, which was denied for failure to comply with the zoning regulations.[1] This action was not timely appealed and therefore became final. Id. at 7; City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. June 1, 2004). The Hayfords then applied to the City's Zoning Board of Adjustment ("ZBA") for a variance to convert the Property from 4 dwelling units to 6. In May of 1998, the ZBA denied the Hayfords' request for a variance.[2] This decision was also unappealed and became final. Hayford I, No. 126-7-04 Vtec at 7 (Feb. 17, 2007).

On July 11, 2001, the Zoning Administrator issued a Notice of Violation (NOV) for the use of six dwelling units where only four were approved. The Hayfords timely appealed this NOV to the City's Development Review Board ("DRB"). City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec at 3 (Vt. Envtl. Ct. June 1, 2004). In August 2001, the Hayfords also applied to the DRB for a variance to use the rear building as a dwelling unit and to eliminate one of the 5 dwelling units in the main building. The DRB upheld the ZA's new NOV and denied the Hayfords' variance request. Id. The Hayfords subsequently appealed both decisions to the Environmental Court.

In 2003, the Environmental Court upheld the variance denial, holding that the ZBA's 1998 initial denial was final and binding. Appeal of Hayford, No. 154-9-01 Vtec, slip op. at 1 (Vt. Envtl. Ct. Mar. 6, 2003) (Meaker, J); see Hayford I, No. 126-7-04 Vtec at 8 (Feb. 17, 2007). In the same decision, the Court also upheld the July 2001 NOV regarding the 6th residential unit in the rear building and overturned the NOV with respect to the 5th unit in the main building, since the City had previously granted a permit to allow the Hayfords to repair one of the apartments after a fire in 1993. Hayford I, No. 126-7-04 Vtec at 8 (Feb. 17, 2007). This decision was not appealed

---

[1] The Zoning Administrator denied the Certificate of Occupancy on the grounds that the Hayfords failed to gain ZBA approval for: "(1) an expansion of a non-conforming use (due to the two principal buildings); (2) an area variance as the property is undersized for six residential units; and (3) possible variances for site plan requirements of the regulations, such as parking; and also due to the lack of a 'building permit' for the fifth unit in the main house." City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec at 3 (June 1, 2004).

[2] The ZBA noted that the Property "required five variances: regarding the lot area, the sideline setbacks, the rear setback for principal buildings, landscaping around the perimeter of a parking lot, and no parking within the required setbacks." Id.

and therefore became final. In violation of the Environmental Court's 2003 decision, the Hayfords and subsequently the Benoits continued to rent the 6th unit in the rear building.[3]

In June 2003, the Zoning Administrator filed an enforcement action seeking injunctive relief and penalties against the Hayfords, later amended to include the Benoits. That action was transferred to the Environmental Court in September 2003, as Docket No. 161-9-03 Vtec. The defendants moved for summary judgment, arguing that the statute of limitations at 24 V.S.A. § 4496 (now § 4454) barred the action. Without deciding that motion, Judge Wright held only that the statute of limitations in § 4496 did not bar the City from pursuing its enforcement action under 24 V.S.A. § 4470(b), which allows municipalities and interested persons to enforce final decisions of municipal panels via complaint to the Environmental Court, but does not provide for penalties (despite the fact that the City had filed its action under 24 V.S.A. §§ 4444 and 4445, to which the statute of limitations at § 4496 did apply). City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec at 4 (June 1, 2004). The decision set a status conference where the City could decide whether it wished to amend its complaint to proceed under § 4470(b) instead of, or in addition to, the other provisions.

This decision also includes seemingly the first appearance in Environmental Court jurisprudence of the notion that the statute of limitations now contained at 24 V.S.A. § 4454 might not bar enforcement against continuing use violations. The decision did not definitively state this as a rule, but rather stated in dicta, "In considering their positions in preparation for that telephone conference, the parties may also wish to examine a distinction that *may* be made between a violation due to the occurrence of construction or physical changes to a property or a building, and a violation due to the use of property." Id. at 5 (emphasis added) (citing cases from other jurisdictions drawing this distinction).[4] A status conference was subsequently held, at which the parties agreed to put the case on hold. Thus, the Court never issued any further

---

[3] The Benoits purchased the property from the Hayfords in June 2003. They continued to rent out the rear building as a residential unit. Hayford II, 2008 VT 36, ¶ 7.

[4] Despite the passage distinguishing between use and structural violations being dicta, in City of Burlington v. Richardson, No. 188-10-03 Vtec at 12 (Vt. Envtl. Ct. June 27, 2006) (Wright, J) the Court did cite to it (albeit with a "see" cite) when it more firmly adopted the interpretation ultimately overturned in 204 North Ave (although this too was arguably dicta, as Richardson granted relief under § 4470(b)). We regret any confusion this citation to a predecessor case in Hayford I may have caused.

decision on the summary judgment motion and the parties ultimately dismissed the case by stipulation as redundant to the enforcement action in Docket No. 126-7-04 Vtec (*see below*).

Immediately after the Court put the case on hold, the Benoits applied to the DRB for an after-the-fact approval of the conversion of the rear building to residential use under Article 6 of the St. Albans Land Development Regulations. The DRB denied their application in July 2004, and they appealed to the Environmental Court as Docket No. 148-8-04 Vtec. Immediately after the DRB denial, the Zoning Administrator re-filed the enforcement action with the Environmental Court, Docket No. 126-7-04 Vtec, to add a new basis for its enforcement action under § 4470(b). In ruling on the appeal of the DRB denial, Judge Wright held that the Land Development Regulations allowed a non-conforming use to be altered or extended only if doing so did not result in an additional dwelling unit or additional non-conforming use; Judge Wright therefore concluded that the rear building could not be approved as a sixth residential unit while the fifth unit in the main building was maintained, "as such approval would result in one additional dwelling unit" relative to the situation that the after-the-fact conversion application sought permission to alter. In Re: Appeal of Benoit and Kane, No. 148-08-04 Vtec, slip op. at 1 (Vt. Envtl. Ct. Dec. 15, 2005). Judge Wright gave the appellants the opportunity to amend their application so that it would include converting the main building back from five units to four, which would have kept the rear building from being an "additional unit" and thus an unlawful expansion of a nonconforming use. However, they declined to do so at that time. Id. The Court therefore denied the appeal, although it stayed entry of judgment pending the resolution of the re-filed enforcement case, per the directive contained in Hayford I.

ii. Hayford I

In Hayford I, the City preserved its claims brought under 24 V.S.A. §§ 4444 and 4445 (now §§ 4451 and 4452) in City of St. Albans v Alan Hayford et al., Docket No. 161-9-03, while adding an alternative basis for the action under 24 V.S.A. § 4470(b). Insofar as it sought penalties under § 4444 or to enforce a decision of the municipal panel under § 4470(b), the City relied on the final NOV upheld in Appeal of Hayford, No. 154-9-01 (Mar. 6, 2003). The City sought an injunction against continued use of the rear building as a dwelling unit and penalties against the Hayfords

and Benoits. The Environmental Court made the above findings of fact and, inter alia, and the following legal conclusions.

The Court concluded that, after the 1977 Ordinance was adopted, the property became non-conforming in its side and rear setbacks and by having two principal buildings rather than the allowed one. However, these nonconformities were legally allowed to continue, though not allowed to be expanded, as pre-existing nonconforming uses. In other respects, including minimum parking, lot-size and area per-unit requirements, the property conformed to the 1977 ordinances. Hayford I, No. 126-7-04 Vtec at 3–4 (Feb. 17, 2007).

Next, the Court concluded that the addition of the fifth unit "did not render the property more non-conforming" for two reasons: First, multi-family dwellings were a permitted use in the district and the fifth unit did not change the building's use as a multi-family dwelling. Second, the property still met the minimum requirements for parking spaces per unit and lot area per unit. Hayford I, No. 126-7-04 Vtec at 4 (Feb. 17, 2007). Implied, though not stated, is that the 1986 conversion to five units without site-plan approval or a new permit was not a violation. In any event, based on the earlier holding in Appeal of Hayford, No. 154-9-01 Vtec (Mar. 6, 2003), the Court reiterated that, at least by 1998, "having five residential units on the property or in the main building was not a violation." Hayford I, No. 126-7-04 Vtec at 5 (Feb. 17, 2007).

The Court found that the change in use of the rear building from a nursery school to a sixth unit "without first obtaining a zoning permit and without first obtaining site plan approval was a violation of the Zoning Regulations." Hayford I, No. 126-7-04 Vtec at 5 (Feb. 17, 2007). Again, however, the Court noted that even with six units, the property still met the minimum per-unit parking and area requirements of the 1977 Ordinances, and the addition of another unit did not change the use of the property as a whole from multi-family residential to another use. It therefore concluded, admittedly somewhat confusingly, that "[t]the use of the rear building as a residential unit was not a *use* violation, in that multi-family residential use was a permitted use in the district." Id. (emphasis added).

Things changed according to the Court with the enactment of the 1998 regulations. Those regulations increased the area-per-unit requirements from 3,000 to 5,000 square feet. At just under 21,000 square feet, the property could therefore legally support only four units under

these new regulations. The regulations also changed multi-family use in the property's district to a conditional use. Judge Wright determined that the property's use as a multi-family residence on the whole was "grandfathered" after 1998 and would not have needed conditional use approval as long as it was not changed. Hayford I, No. 126-7-04 Vtec at 6-7 (Feb. 17, 2007).

However, Judge Wright also concluded that the property's lack of conformity with the new area-per-unit requirements was *not* grandfathered because residential use of the rear unit did not comply with all applicable laws before the 1998 regulations took effect, due to the failure to obtain a permit and site-plan approval in 1987. Id. Because of the previous ruling that the use of five units in the main building was grandfathered due to the 1993 permit, only the sixth unit was deemed to be in violation of these density requirements. Id. Importantly, even though the 15-year statute of limitations may have barred enforcement in 2003 or 2004 against the conversion violation that first occurred in 1987, it did not bar enforcement against the density violation that first occurred in 1998. Id. at 11. Judge Wright therefore enjoined further use of the rear building as a residential unit and calculated monetary penalties based only on the use of this rear building in violation of the 1998 density requirements. Id. at 13.

The saga had one final coda: After Hayford I, the Benoits once again applied to the Development Review Board, this time for a permit to convert the main apartment building back to four units and a permit authorizing the use of the rear building as a residential unit. The DRB denied their application and the Benoits appealed to the Environmental Court, Docket No. 143-7-08 Vtec. Before trial, however, the City and the Benoits reached a settlement agreement that allowed the Benoits to use the rear building as a residential unit so long as they only rented four units in the main building. That agreement was entered as a stipulated judgment and order by the Environmental Court. In re 53 High Street, City of St. Albans, No. 143-7-08 Vtec, slip op. (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.). As far as this Court is aware, that order has been followed since 2009.

## Standard of Law

The present motion is titled a motion for relief from judgment and purports to seek relief pursuant to V.R.C.P. 60(b)(1). However, the decision it questions was not a final judgment or order, but rather the denial of a post-judgment motion. *See* V.R.C.P. 60 (*"*On motion and upon

such terms as are just, the court may relieve a party or a party's legal representative from a *final* judgment, order, or proceeding for the following reason") (emphasis added). Given this, we will construe the motion as a motion for reconsideration.

While there is no mandate that we address motions to alter or reconsider our decisions on either pretrial motions that do not conclude a case or on post-trial motions, we have historically treated both as motions filed in accordance with V.R.C.P. 59(e). *See, e.g.*, In re Lathrop Ltd. P'ship I, Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Durkin, J) (rev'd on other grounds) (applying the 59(e) standards when asked to reconsider a pre-trial motion); In re Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jan. 15, 2019) (Durkin, J), aff'd 2019 VT 60 (applying the same standards when asked to reconsider a motion for relief from judgment); V.R.E.C.P. 5(a)(2) (making the Vermont Rules of Civil Procedure applicable to our proceedings).

In any case, even if the April order were viewed as a final judgment or order, we would still treat the present motion as a motion filed under Rule 59(e), as it was filed within 28 days of judgment. *See* Gregory v. Poulin Auto Sales, Inc., 2012 VT 28, 191 Vt. 611 (2012) (mem. op.) ("A Rule 60(b) motion made within ten days of judgment is treated as a Rule 59(e) motion."[5]); Chet's Shoes, Inc. v. Kastner, 710 F. Supp. 2d 436, 454 (D. Vt. 2010), aff'd, 449 F. App'x 37 (Fed. Cir. 2011) ("In the past, motions for reconsideration were considered Rule 59(e) motions if filed within ten days of the judgment, and Rule 60(b) motions if filed thereafter. Because the deadline for filing Rule 59(e) motions was recently extended to 28 days, the dividing line for classifying motions for reconsideration has presumably shifted out to 28 days as well.") (internal citations omitted).

All roads therefore lead to Rule 59(e). It is ultimately within the Court's discretion whether to grant motions under 59(e), and we have identified four basic grounds for doing so: (1) to "correct manifest errors of law or fact upon which the judgment is based"; (2) to allow a moving party to "present newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; and (4) to respond to an "intervening change in the controlling law." Lathrop Ltd. P'ship I, Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec at 10–11 (Apr. 12, 2011)

---

[5] At the time Gregory v. Poulin was decided, ten days was the time limit to file a motion to alter or amend under V.R.C.P. 59(e); it was extended to 28 days in 2018 to match the changes to the Federal Rules of Civil Procedure.

(quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1); *see* Drumheller v. Drumheller, 2009 VT 23, ¶ 29, 185 Vt. 417 ("Vermont Rule 59(e) is substantially identical to Federal Rule of Civil Procedure 59(e), and we have looked to federal decisions interpreting the federal rule for guidance in applying the Vermont rule").

We are also mindful in this instance that if we grant the motion and enter the proposed stipulation filed by the parties in December, we would ultimately be vacating a final judgment, which should be done "guardedly and only in extraordinary circumstances," Miller v. Miller, 2008 VT 86, ¶27 (2008). The fact that this final judgment was then affirmed by the Vermont Supreme Court does not impact upon our decision to grant or deny the pending motion, but it does encourage us to conduct this thorough review.

### Discussion

In the April order, we discussed the above history and the parties' contention in their joint motion that 204 North Ave overturned a holding underlying Hayford I. We concluded they were mistaken as a matter of law. However, we did agree with the parties' basic premise that the 204 North Ave precedent did invalidate the long-standing Environmental Court interpretation of 24 V.S.A. § 4454, namely that the 15-year statute of limitations did not bar enforcement of use violations that first occurred outside the 15-year window but continued within it. And this interpretation apparently first appeared in inchoate form in the 2004 decision and order in City of St. Albans v Alan Hayford et al., No. 161-9-03 Vtec (June 1, 2004) and re-appeared in City of Burlington v. Richardson, No. 188-10-03 Vtec (Vt. Envtl. Ct. June 27, 2006). However, we also concluded that the overturned interpretation of § 4454 was not the basis for the decision in Hayford I. Rather, as summarized succinctly by the Supreme Court in Hayford II, the Court in Hayford I found that even though there was a violation in 1987 when the rear building was converted to residential use without approval, "a *new and independent* violation occurred in 1998 when the City adopted its new zoning regulations," Hayford II, 2008 VT 36, ¶ 9 (emphasis added).

This "new and independent" violation, as identified in Hayford I and II, was *not* simply the ongoing use of the property for more than four (or five) residences without having first obtained site plan approval (which would be neither new, nor independent). Instead, it was the "density

-10-

violation," Hayford I, No. 126-7-04 at 5 (Feb. 17, 2007)—the use of the property for six units when the 1998 Regulations' area per-unit requirements allowed only four. "Accordingly," the Supreme Court concluded, "the Environmental Court did not err in declining to apply the statute of limitations contained in § 4454(a)" to this new and independent violation. Hayford II, 2008 VT 36, ¶ 11.

Hayford I did consider the possibilities that "even if the violations began earlier," i.e., in 1987, *either* enforcement against the violations was not barred under § 4454, *or* the City could pursue enforcement of the final NOV under § 4470(b). Hayford I, No. 126-7-04 Vtec at 11-12 (Feb. 17, 2007). Nevertheless, these were merely alternative arguments, and, as we noted in April, the Supreme Court explicitly treated them as such. *See* In Re Benoit Conversion Application, Nos. 143-7-08 Vtec, 148-8-04 Vtec, 126-7-04 Vtec at 10-11 (Apr. 20, 2021); Hayford II, 2008 VT 36, ¶9 n.1.

We understand the present motion to argue that our April order did not properly appreciate the factual and procedural similarities between 204 North Ave and Hayford I and therefore that the order was based on legal error. We have already discussed above the connection between the Hayford line of cases and the interpretation of § 4454 overturned in 204 North Ave. Based on the arguments raised explicitly or implicitly in the present motion, a couple of other points warrant further clarification. We therefore will also discuss first our understanding of what 204 North Ave did *not* change in the interpretation of land-use laws, and second, the apparent inconsistency in what is deemed a use violation between Hayford I and 204 North Ave.

In deciding 204 North Ave, the Supreme Court looked to the plain language of the text of 24 V.S.A. § 4454 as well as the legislative purposes enumerated in the pertinent statutory amendment. *See* Law 1999 No. 46. This law was passed in response to Bianchi v. Lorenz, 166 Vt. 555 (1997). It both overruled Bianchi's holding that zoning law violations constituted an encumbrance on the property that impaired marketable title and amended the statute of limitations in § 4454 for prosecuting such violations to essentially its present form. 1999 No. 46 §§ 1(b)(3), 7, 8. The Supreme Court concluded that there was no basis to view use violations as exempt from this statute of limitations due simply to their continuing nature; rather, the statute's

plain language, in light of its legislative purpose, supported the opposite conclusion. 204 North Ave, 2019 VT 52, ¶¶ 6-8.

By one reading, the present motion interprets 204 North Ave to hold that the same or ongoing use of a property cannot give rise to independent violations of different provisions of the zoning laws at different points in time. That is clearly an erroneous interpretation. The enabling statute for municipal zoning laws gives municipalities many tools to regulate land-use. *See* 24 V.S.A. § 4410 ("In its bylaws, a municipality may utilize any or all of the tools provided in this chapter and any other regulatory tools or methods not specifically listed" provided they don't conflict with provisions of other sections of the title.); *see generally* 24 V.S.A. § 4411 (authorizing municipalities to establish, *inter alia*, specific permitted uses, dimensions and location of structures, and density standards) and 24 V.S.A. § 4414 (authorizing zoning districts, performance standards, incentives, etc.). Some of these tools may overlap in their practical effects. For example, minimum area per-unit requirements and lists of permitted uses may both operate to limit the number of residential units on a property. That does not mean a city cannot enforce all legal provisions of its bylaws as applicable to a given property. *Cf.* In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 10, 175 Vt. 335 ("Vermont law does not mandate a specific method for regulating nonconforming uses; thus, we turn to the municipal zoning regulation to determine how the municipality regulates nonconforming uses.") (internal quotation marks omitted).

Nor, as the present motion suggests, does 204 North Ave state that if an ongoing use has generated multiple independent violations, the later-in-time violation should be adjudged to have "first occurred" for statute of limitation purposes at the same time as the earliest violation. Indeed, the plain language of the statute cannot logically support such a reading.

Section 4454 of title 24 sets the start date for the running of the statute of limitations as "the date the alleged violation first occurred." A violation is something of a construct: It is a combination of (at the very least) an action or behavior and a law. A zoning violation, specifically, is the combination of an instance of land development (commonly separated into the categories of construction and use or change in use) and a zoning ordinance that land development violates. *See* 24 V.S.A. §§ 4449(a)(1) (prohibiting "land development. . . without a permit") and 4303(10) (defining "land development"). By its terms, the statute of limitations covers both "the failure to

obtain…any required municipal land use permit" and the failure to "comply with the terms and conditions of" any such permit. 24 V.S.A. § 4454(a). It thereby covers errors both of omission and commission—instances when a citizen violates the zoning laws by not obtaining a required permit, and instances where a citizen violates the terms and conditions of a permit he or she previously obtained. In either situation, the statute refers to the date "the alleged *violation* first occurred," not the date the use or construction first occurred. In other instances, however, as when new regulations are adopted that give rise to additional violations in an already unlawful structure or use, those dates may be different. In these situations, under a plain meaning interpretation, the violation does not occur until the law takes effect. *Cf.* In Re Tekram Partners, 2005 VT 92 ¶ 18, 178 Vt. 628 (mem. op.) (holding that the presence of a dumpster in a particular site did not become a violation until a site plan was approved that limited the permissible locations for dumpsters to other areas of the property); In Re Beauregard NOV, No. 3-1-15 Vtec, slip op. at 9 (Vt. Sup. Ct. Envtl. Div. Feb. 11, 2016) (Durkin, J.) ("Because this violation arises out of Appellants' permit, the violation could not have existed before the permit did."). In Hayford, the density violation did not arise until the 1998 regulations took effect. Hayford I, No. 126-7-04 Vtec at 11 (Feb. 17, 2007).

Furthermore, by using the definite article ("the date *the* alleged violation first occurred"), the statute clearly suggests it is the violation which the city is seeking to enforce that matters for the statute of limitations, not any previous violations. This, of course, makes sense. A city should not be prevented from enforcing its zoning laws against a property just because that property has any previous violations whose enforcement is now time-barred.

It is true that when new zoning laws take effect, a pre-existing use that does not conform to the new rules is often allowed to continue as a lawful non-conforming use, and this is generally not treated as a violation. 24 V.S.A. § 4303(15) (defining a non-conforming use as one that "did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws"); 24 V.S.A. § 4412(7) (directing municipalities to define in their bylaws how non-conforming uses are addressed but leaving it up to them how to do so). However, where, as here, the existing use was not fully lawful, its continuance in non-conformity with the zoning laws is a violation. *See* In re Chamberlin, 134 Vt. 359, 361 (1976); *see also* Killington Mountain House,

<u>LLC NOV</u>, No. 138-12-18 Vtec, slip op. at 6-9 (Vt. Super. Ct. Envtl. Div. Nov. 17, 2020) (Durkin, J.) (discussing at length "unlawful preexisting nonconforming use[s]"). <u>204 North Ave</u> does not undo this fundamental logic distinguishing lawful from unlawful pre-existing non-conforming uses or override the long-standing principle that "[t]he public interest in the regulation and gradual elimination of nonconforming uses is strong." <u>In re Gregoire</u>, 170 Vt. 556, 559 (1999) (mem. op.). Nor does its holding suggest that if the previous violation that prevents a property from becoming lawfully non-conforming under the new regulations (from being "grandfathered," in prior parlance) occurred more than 15 years before an attempt to enforce those regulations, such an enforcement action must fail.

Finally, <u>204 North Ave</u> does not state that the 15-year-statute of limitations in § 4454 applies to actions brought under § 4470(b) to enforce a final decision of a municipal panel. As § 4470(b) was an alternative basis for the injunctive relief granted in <u>Hayford I</u>, *see* <u>Hayford I</u>, No. 126-7-04 Vtec at 12-13 (Feb. 17, 2007), this is yet another reason not to vacate the decision.

That said, there are unique facts in <u>Hayford</u> that make the above distinctions hard to appreciate. In particular, the combination of a vaguely worded Notice of Violation with the coincidental overlapping effects of two separate zoning provisions could generate confusion. The relevant NOV described the violation as follows: "Use of this property for six dwelling units. The property is approved for only four dwelling units." City of St. Albans Zoning Violation – 53 High Street (July 11, 2001), admitted as Plaintiff's Exhibit 19, <u>City of St. Albans v. Hayford</u>, 2008 VT 36. Coincidentally, the 1998 minimum area per-unit requirements dictated that this property could only support four units, and four units were also what existed prior to the addition of the fifth and sixth units in 1986 and 1987 without permits or site plan approval. It is therefore not apparent simply from reading the NOV whether it refers to one or both of these violations.[6]

It would be understandable to read this NOV and think it referred only to the early conversion of the property to six units. This would be especially understandable without the context of the preceding decisions of the Zoning Administrator and Zoning Board of Adjustment denying, respectively, a Certificate of Occupancy and variances on numerous grounds, including

---

[6] If the density requirements had been 6,000 square feet per unit, say (which would have allowed for only three residential units on the property), rather than 5,000 square feet, this coincidence, and the attendant confusion, likely would have disappeared.

a failure to meet the new density requirements.  Hayford I, No. 126-7-04 Vtec at 7 (Feb. 17, 2007); City of St. Albans v. Alan Hayford et al., No. 161-9-03 at 3 (Envtl. Ct. June 1, 2004, Wright, J) (describing the grounds for denial).  However, with that context before us, we cannot say that the Environmental Court in Hayford I clearly erred by reading the NOV as directed at the density violation—in whole or in part—and granting remedies against this violation.

Thankfully, the legislature has revised the enabling statute in the years since Hayford I, and municipalities are now required to state "the bylaw or municipal land use permit alleged to have been violated" and "the facts giving rise to the alleged violation" in a notice of violation. See 2013 No. 146 (Adj. Sess.), § 10 (adding these requirements at 24 V.S.A. § 4451(a)(2)(A)-(B)). It would appear that these present-day statutory requirements should prevent notices of violation as vaguely worded as in Hayford I.  However, as this Court is all too well aware, Vermont municipalities still issue notices of violation that do not describe the facts underlying a violation with much detail, or that reference multiple provisions of their zoning ordinances being violated without specifying how and when each provision was violated.  But we must note that such municipalities do so at their own peril:  A court may not always dig deeply to ascertain which violation(s) a notice of violation or enforcement action relates to, and if one plausible violation is outside the statute of limitations, the action may be vacated or dismissed.  We therefore urge municipalities to comport with the statutory requirements by specifying, in as much detail as possible, the bylaws or permit conditions thought to have been transgressed and the facts that demonstrate a transgression for each alleged violation referenced in a notice of violation.

Lastly, the present motion has correctly noted some inconsistency in the use of the phrase "use violation" in Environmental Division jurisprudence spanning 13 years.  As noted earlier, the Court in Hayford I deemed that changing the use of the rear building from a nursery school to a dwelling unit without a permit or site-plan approval was "not a use violation," as multi-family use was a permitted use.  Insofar as we understand the Benoits' present motion to point out that in 204 North Ave, a similar fact pattern was deemed to be a use violation, they are correct.[7]  In part,

---

[7]  In 204 North Ave, the property owner also added a residential unit to a property, converting a duplex to a triplex. Burlington's zoning laws at the time made more than two dwelling units a permitted use in the district but one that required a permit and site plan approval.  See City of Burlington Comprehensive Development Ordinance §§ 8(B)(1), 80(B)(2) (1977).  The owners did not obtain such a permit or site plan approval or a certificate of occupancy before beginning to rent out the third unit.  204 North Ave, 2019 VT 52, ¶2.  This was treated as a use violation by this Court

this was because "the parties [did] not dispute...whether the violation here was a use violation," 204 North Ave, 2019 VT 52, ¶4.  In part however, this may reflect a changing use of the term "use violation" in the years since Hayford I was decided, to encompass even changes from one permitted use of a property to another where required permits or site plan approval were not obtained.  Of course, 204 North Ave makes the question of what counts as a use violation less important, as all zoning violations are now subject to the same statute of limitations at 24 V.S.A. § 4454 when enforcement is brought under § 4451 or § 4452.  Id. at ¶ 7.

However, this does not mean, as the Benoits argue in their motion, that the holding in 204 North Ave demands a reversal in Hayford.  The motion emphasizes that Burlington's zoning ordinances were also amended between the conversion and the enforcement: "Given the apparent irrelevancy of the adoption of Burlington's amended zoning ordinance in 204 North Avenue, the adoption of the City's amended zoning ordinance in Hayford should also be irrelevant." Motion for Relief from Judgment (2nd) at 5, filed May 12, 2021.  This, of course, puts the cart before the horse.  204 North Ave does not stand for the proposition that a change in zoning laws can never give rise to a new violation, just as Hayford does not stand for the proposition that it always must.  There was no finding in 204 North Ave that the violation cited in the City's notice arose when Burlington's amended ordinances took effect.  There was such a finding in Hayford.  This amply explains why one set of amendments was relevant to a case's outcome, and one was not.

### Conclusions of Law

For the reasons articulated above, we conclude that we cannot grant the relief sought by the Benoits in their motion dated May 12th, 2021.  Therefore, that motion is **DENIED**.  We again note that nothing in our determinations here should be read as restricting the Benoits from seeking new review and approval of their future use of the property, nor should our decision be read to restrict the parties' ability to enter into an agreement concerning the future use of the property that does not need the approval of this Court.

**So Ordered.**

---

and the Supreme Court.  Id. at ¶4; In Re: 204 North Avenue NOV, No. 160-11-17 Vtec at 3 (Vt. Super. Ct. Envt'l. Div. Sept. 26, 2018).

Electronically signed on October 14, 2021, at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division